UNITED STATES of America,
Plaintiff,

v.

GENERAL MOTORS CORPORATION,
Defendant.

United States District Court
S. D. New York.

March 25, 1960.

Larry L. Williams, Washington, D. C., and Richard B. O'Donnell, Attorneys, Department of Justice, New York City, for plaintiff United States.

Cravath, Swaine & Moore, New York City, Henry M. Hogan, Detroit, Mich., Bruce Bromley and George B. Turner, New York City, of counsel, for defendant General Motors Corporation.

HERLANDS, District Judge.

Motion by defendant for transfer to the Northern District of Ohio, Eastern Division, and for a stay. Motion by plaintiff for production of documents.

In this action under Section 7 of the Clayton Act, 15 U.S.C.A. § 18, the Government charges that General Motors violated that antimerger section by its 1953 acquisition of the stock and subsequently transferred assets of Euclid Road Machinery Company.

Euclid then was one of the leading producers of off-highway earth-moving equipment. Although General Motors did not manufacture off-highway earth-moving equipment prior to 1953, it did manufacture major components of such equipment (e. g., diesel engines and transmissions); and General Motors supplied them to some of the manufacturers. In 1953, Euclid purchased more than half of its requirements for diesel engines and transmissions from suppliers other than General Motors.

The complaint charges that "since 1953 Euclid Division [of General Motors, which continued the business of the merged company] has materially reduced its purchase of diesel engines and transmissions from suppliers other than General Motors." The complaint further alleges that the Euclid Division has enlarged the line, and that some of its new products are made exclusively with General Motors' diesel engines, transmissions, and other components. According to the complaint, General Motors, prior to and during 1953, considered entering

the earth-moving equipment field independently, by use of its own facilities.

The Government's theory is that the acquisition violated Section 7 by reason of the fact (1) that it eliminated potential competition between General Motors and Euclid in the off-highway earth-moving equipment line; and (2) that its reasonably probable effect may be substantially to lessen competition (a) in that line, because General Motors enjoys a competitive advantage over other producers by reason of its integration and financial power, and because other mergers in the field may be fostered; (b) in the manufacture and sale of components; and (c) in the business of financing dealers' purchases and sales. The latter is said to be a line of commerce in which Yellow Manufacturing Acceptance Corporation (a wholly-owned subsidiary of General Motors) is engaged. The Government asks for complete divestiture.

The defendant moves, under 28 U.S. C.A. § 1404(a), to have the action transferred from this district to the Northern District of Ohio, Eastern Division, sitting in Cleveland. All of the plants, managerial offices and personnel of defendant's Euclid Division are located in Cleveland. Defendant's executive offices are in Detroit and New York.

Section 1404(a) provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

■ The motion is addressed to the sound discretion of the court. The controlling criteria have been expounded in Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 508, 509, 67 S.Ct. 839, 91 L.Ed. 1055. Although a lesser showing of inconvenience is now required for transfer under section 1404(a) than was formerly required for dismissal under the doctrine of *forum non conveniens* (with which Gulf Oil was concerned, Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789), the plaintiff's choice

of forum will not be disturbed unless the balance of convenience and justice weighs heavily in favor of the defendant. Lykes Bros. S. S. Co. v. Sugarman, 2 Cir., 1959, 272 F.2d 679, 681.

■ Under section 1404(a), the court may transfer an action to a more suitable forum when the plaintiff's choice of forum, although permitted by a venue statute, probably will work a substantial hardship upon the defendant and the witnesses, which hardship cannot be justified by a showing of countervailing convenience or necessity on the plaintiff's part. The plaintiff may not, by choice of an inconvenient forum, inflict upon the defendant expense and trouble not necessary to plaintiff's own right to pursue his remedy. Gulf Oil, supra, 330 U.S. at page 508, 67 S.Ct. at page 839; Koster v. (American) Lumbermens Mutual Casualty Co., 1947, 330 U.S. 518, 531–532, 67 S.Ct. 828, 91 L.Ed. 1067.

A motion under section 1404(a) is usually brought soon after a complaint is filed. At that time, the parties generally do not have definitive knowledge of the principal issues, the lines of proof, the names of all witnesses, and the probable duration of the trial. Good-faith estimates and informed judgment must, to some extent, be utilized. The relative advantages and obstacles to a fair, speedy and economical trial (Gulf Oil Co., supra, 330 U.S. at page 508, 67 S.Ct. at page 839) must be evaluated in order to discern whether the movant has carried its burden of demonstrating that the balance of convenience and justice weighs heavily in its favor.

■ The principal desiderata are: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of witnesses; possibility of a view, if appropriate; and all other practical problems that would make the trial of a case easy, expeditious and inexpensive. In appraising the factors of public interest, it is also appropriate to give some consideration to the relative state of trial calendar congestion in the districts involved.

■ Defendant's convenience must be viewed in light of not only the degree to which its business will be disrupted by trial in one forum rather than another, but also its cost of transporting to a city other than their origin (and maintaining therein) people, files and objects. According to its affidavits, defendant will rely almost entirely on the testimony of a number of important Euclid executives, and on data, documents, records, drawings and demonstrative evidence located at the Euclid Division plants and offices in and around Cleveland.

If the trial is held in Cleveland, the Euclid executives can perform their regular duties except when actually testifying or preparing testimony. They need not neglect their regular duties for an entire day, or lose time waiting to testify, awaiting recall to the stand, or awaiting the settlement of procedural matters among the attorneys and the court. Even on days on which such a witness testifies, he can devote noncourt and evening hours to his regular work and to conferring with associates, subordinates, customers and suppliers. He can accomplish this in his familiar working place, with tools, files and help at hand.

■ The Government seeks to place upon the defendant the burden of showing that specific harm—such as loss of sales or shutdown of operations—would result from the absence of these men. Such a grave showing is not absolutely necessary; clear and convincing demonstration of substantial inconvenience and genuine hardship would suffice.

The personal convenience of these prospective witnesses is not to be ignored cavalierly. If the trial is held in Cleveland, they can return to their homes from day to day, associate with their families and friends, and attend to their personal business. They can use their own automobiles locally, move in familiar surroundings, and keep to a minimum the work which would otherwise pile up during their absence. They can avoid nonreimbursable expenses, bound to be incurred should they be required to travel to and stay in New York. If each of these factors is not, considered individually, a serious matter, they may in the aggregate tend to tip the scale in the defendant's favor.

Cleveland is some four hundred air and five hundred road miles from New York. The round trip is about one thousand miles. In New York, local transportation and housing must be arranged for people and things. The cost to defendant, avoidable by trial in Cleveland, would be considerable. The Government's showing of the number and type of company aircraft owned by General Motors is not persuasive to the contrary. There is expense in operating even company aircraft; and they may be needed for other purposes. Other defense witnesses and exhibits apparently may come from Detroit and Indianapolis, both much nearer to Cleveland than to New York.

Defendant plans to present some demonstrative evidence. (For example, it intends to show technical justification for using exclusively General Motors diesel engines and transmissions in some of its new Euclid products.) This involves actual items of earth-moving equipment in various stages of assembly which, by reason of their dimensions and weight, are not licensable to travel on the highways, and cannot practicably be transported to New York and set up where a court may view and study them.

■ Although no one consideration is controlling in deciding a motion to transfer, it is an important element of justice that a litigant be permitted to present all of its proposed evidence, and in the manner which reasonably it thinks most effective. A view of a defendant's manufacturing plants in operation was found helpful in United States v. Bethlehem Steel Corp., D.C.S.D.N.Y.1958, 168 F. Supp. 576, 580–581.

■ In a Government antitrust suit, the court must consider the welfare of nonparty witnesses, because they are without the protection from subpoena to attend at places far from home normally afforded them by F.R.Civ.P. 45(e), 28

U.S.C.A. With the approval of the district judge, they may be required to travel from any place in the country. 15 U.S.C.A. § 23. Nor are they represented in this proceeding.

The Government has presented a list of thirty-eight manufacturers of earth-moving equipment and components of such equipment. The Government states that its witnesses will be persons associated with those companies. The defendant has indicated that it may also call witnesses from this group. Of the thirty-eight, thirty-five are closer to Cleveland than to New York; thirty-three are west of Cleveland; twenty-seven are in the area commonly thought of as the Midwest; four are within one hundred miles of Cleveland; and one is just outside that radius. Three are closer to New York than to Cleveland; and one of these (White Motor Co.) has its principal offices and plant in Cleveland. Two are within one hundred miles of New York. The Government has not delineated the relative importance of the testimony it expects from persons connected with these various firms.

For almost all of these witnesses, a round trip to New York means covering one thousand miles more than a trip to Cleveland, and taking the time to do so. If the trial is held in Cleveland, some of them might take the trip there and home in a day, and have their own automobiles for local use. Since nonparty witnesses are paid in accordance with a statutory schedule (28 U.S.C. § 1821) they are certain to incur nonreimbursable expense, greater in New York than in Cleveland. They must also suffer the usual disadvantages of being away from home and business for a longer period.

The cost of obtaining one of these witnesses on the statutory schedule for one day in court would be about $100 greater for attendance in New York than for attendance in Cleveland. (The official distance from Cleveland to New York for payment of witnesses is four hundred and ninety-three miles.)

■ The convenience of the Government must also be considered. The Antitrust Division staff assigned to this case (five attorneys and one economist) are based in Washington, D. C. Presumably, the bulk of their material is there. The Government asserts that its convenience is best served by trial in New York because the field office there, located in the courthouse, is the oldest and largest in the country, and has adequate space and help for this case. Moreover, New York is closer to Washington, D. C., by about one hundred miles than is Cleveland; and regularly scheduled flights are more frequent. In contrast, the Antitrust Division field office in Cleveland is not in the courthouse there, and has inadequate space and help for the prosecution of this case. The Government anticipates that it would be necessary to rent additional space in Cleveland, at a cost of $8,400 per year. It also estimates the following additional annual expense of trial in Cleveland rather than New York: Travel cost $2,880; Communications $2,500; Supplies and equipment $2,400; Furniture and fixtures $2,800; Transportation of things $10,000. The total is approximately $29,000.

Expense to the Government is a matter for serious consideration. The appropriation available to the Antitrust Division is limited; and this, in turn, limits its enforcement activities. There is an important public interest in conserving the Division's funds.

Although it must be given due weight, expense to the Government cannot be the controlling consideration. Solicitude for enforcement activities must be weighed against possible oppression of or hardship to defendants and witnesses. It is to be assumed that the Government considers the problem of expense when it chooses the office whose attorneys will handle a case.

The Government's estimate of the additional expense which it would incur by trial in Cleveland does seem somewhat over-generous, particularly the largest item, "Transportation of things $10,000." No breakdown of that item is suggested. The cost of bringing witnesses to New York somewhat offsets the anticipated

additional cost to the Government of trial in Cleveland.

A vast number of the major corporations can be found in New York City for antitrust venue purposes. The District court for the Southern District of New York already handles a greater caseload than any other district court.[1] There is a public interest in dealing with this situation by granting a transfer motion when such action is otherwise clearly appropriate.

The court concludes that the defendant and the prospective witnesses of both parties will be greatly inconvenienced by the trial of this action in this district, and that their convenience will clearly be better served by a transfer of this action to the Northern District of Ohio in Cleveland. In comparison, the Government will be only slightly more inconvenienced by a trial in Cleveland than by a trial in New York City. The interests of justice and court administration will be more fully recognized by such transfer. The defendant has discharged its burden of (1) demonstrating that the balance of convenience and of justice strongly preponderates in its favor and (2) overcoming the respect due to an antitrust-plaintiff's venue privilege under 15 U.S.C.A. § 15. See Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329.

Accordingly, the defendant's motion to transfer this action to the Northern District of Ohio is granted.

The Government's motion under F.R. Civ.P., rule 34 for the production of documents is denied without prejudice. It may be renewed, if the Government is so advised, before the transferee court.

The defendant's motion for an order staying all proceedings and extending its time to move against or answer the complaint is granted to the extent that the defendant shall have fifteen days from the filing date of this order to move against or answer the complaint.

Settle order on notice.

---

1. The District Court for the Southern District of New York is the busiest district court in the country in terms of the volume and complexity of litigation handled by it. Ryan, Disposition of Judicial Business in the District Court for the Southern District of New York, D.C. 1959, 24 F.R.D. 373, 394. It has twenty percent of the nation's civil caseload, and only seven percent of the judges, the highest civil caseload per judge in the country. Id., at page 376. It also has the largest number of long and complicated cases. Id., at page 383. As of July 1, 1959, there were pending in this district, one hundred and fifty antitrust actions. Id., at page 384. The Government had thirty-three of its antitrust actions pending in the Southern District of New York, one-third of its national total. Not more than seven such suits were pending in any other district court. Annual Report of the Director of the Administrative Office of the United States Courts, 1959, p. II–36.

As of July 1, 1959, there were six hundred and eight civil cases pending per judge in the Southern District of New York, and two hundred and nineteen in the Northern District of Ohio. Id. at II–27.