**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**GOLCONDA MINING COMPANY and Harry F. Magnuson, Defendants.**

United States District Court
S. D. New York.

Sept. 29, 1965.

Llewellyn P. Young, Regional Administrator, Securities & Exchange Commission, for plaintiff; David Marcus, Kathleen A. Warwick, and Raymond Hersh, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Golconda Mining Corp.; Thomas R. Farrell, New York City, of counsel.

Lowenstein, Pitcher, Hotchkiss & Parr, New York City, for defendant Harry F. Magnuson; James C. Sargent, New York City, of counsel.

HERLANDS, District Judge:

Defendants move to transfer this action to the United States District Court for the District of Idaho, Northern Division, pursuant to 28 U.S.C. § 1404(a), on the grounds that such transfer is for the convenience of the parties and the witnesses, in the interest of justice. The United States District Court for the District of Idaho, Northern Division, sits at Coeur d' Alene, Idaho, in the center of the Idaho mining district, about 403 miles north of Boise, Idaho, and 322 miles east of Seattle, Washington.

28 U.S.C. § 1404(a) provides in pertinent part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The action, conmmenced in this district by the SEC on May 19, 1965, seeks (1) a permanent injunction against the defendants to restrain them "from engaging in the purchase and sale of any security on the basis of information with respect to material facts relating to Hecla Mining Company or any other company acquired by said defendants by virtue of their positions with respect to Hecla Mining Company, or such other company which information has not been made available to all security holders thereof and other public investors"; (2) an order directing defendants "to make restitution to each person from whom said defend-

ants purchased Hecla stock between June 28 and September 10, 1963, and to each person to whom said defendants sold, or sold short, Lucky Friday stock between June 28 and September 10, 1963"; and (3) an order permanently enjoining the individual defendant "from failing to file timely and correct reports with the plaintiff, as required by Section 16(a) of the Securities Exchange Act of 1934, with respect to any equity security (other than exempted security) which is registered pursuant to Section 12 of the Act while said defendant is directly or indirectly the beneficial owner of more than ten per centum of such security or while said defendant is an officer or director of the issuer of such security."

The complaint pleads two causes of action. As to both causes, the complaint alleges that both the corporate defendant ("Golconda") and the individual defendant ("Magnuson") have engaged, are engaged, and are about to engage in acts constituting violations of Section 10(b) of the Securities Exchange Act of 1934 (hereinafter "the 1934 Act"), 15 U.S.C. § 78j(b), and of Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5; and that Magnuson has engaged, is engaged, and is about to engage in acts constituting violations of Section 16(a) of the 1934 Act, 15 U.S.C. § 78p(a).

The first cause of action charges an improper use of inside information by both defendants. The following allegations are made: That the terms of a proposed merger of Hecla and Lucky Friday on an exchange basis of 1.5 shares of Hecla for one share of Lucky Friday were approved by the Lucky Friday Board of Directors on September 6, 1963 and by the Hecla Board of Directors on September 9, 1963;

That the terms of this proposed merger were first announced to the public by the boards of directors of both companies on September 10, 1963;

That prior to September 10, 1963 and beginning in January, 1962, the matter of a possible merger between Hecla and Lucky Friday was discussed by the Hecla Board of Directors (including Magnuson);

That the market price of Lucky Friday stock was twice as high as the market price of Hecla stock; and that Hecla directors became informed that a fair exchange ratio would be on the basis of between 1.2 and 1.5 shares of Hecla stock for each share of Lucky Friday stock;

That the Golconda directors were advised by Magnuson that, in the event of the inevitable merger between Hecla and Lucky Friday, the exchange ratio would probably be between 1.5 to 1.6 shares of Hecla for each share of Lucky Friday;

That the defendants knew, at all material times, that a public announcement of a merger between Hecla and Lucky Friday at an exchange ratio different from the ratio of the market prices of the stocks of the two companies prevailing at the time of such an announcement would, under ordinary market conditions, tend to cause the ratio of the market prices of these stocks to coincide with the ratio of the proposed exchange; that, thus, in January, 1962 the defendants knew that, if it were publicly announced that Hecla and Lucky Friday would merge on the basis of 1.5 shares of Hecla stock for each share of Lucky Friday stock, the market reaction would cause the market price of Lucky Friday stock (which was at that time twice as high as that of Hecla stock) to be lowered and the market price of Hecla stock to be raised, until the ratio of the market price of the Lucky Friday stock to that of Hecla stock would approach 1.5 to 1;

That, therefore, the defendants, armed with the inside information which had not been disclosed to the public bought Hecla stock (the market price of which they knew would go up when the public would become aware of the merger on the basis of 1.5 shares of Hecla for each Lucky Friday share); and the defendants sold or sold short Lucky Friday stock (the market price of which they knew would go down when the public would become aware of the merger on

the basis of 1.5 shares of Hecla stock for each Lucky Friday share);

That, on certain dates in 1962 and 1963 (detailed in the complaint), defendants sold or sold short Lucky Friday stock and bought Hecla stock;

That, after the merger was publicly announced and as expected, the market price of Lucky Friday stock declined and the market price of Hecla rose; that, thereafter, because the market price of Lucky Friday stock declined, Golconda covered its short position in Lucky Friday stock at a profit.

The second cause of action charges that Magnuson engaged in fifteen transactions in Hecla stock during certain specified months in 1963 and 1964, which transactions Magnuson failed to report to the SEC within ten days of the month in which each transaction occurred, as required by Section 16(a) of the 1934 Act. It is also alleged that Magnuson did not file the reports required by Section 16(a) with respect to these fifteen transactions until December 30, 1964, which date was well after said defendant knew that the SEC was investigating his activities in connection with Hecla stock. Moreover, it is alleged that Magnuson filed a false report with the SEC in October, 1963.

Consideration will now be given to the factors relevant to the question whether a transfer to Idaho would be for the convenience of the parties and the witnesses, in the interest of justice.

■ One observation must be made preliminarily: the plaintiff has brought this case in this forum under the venue privilege explicitly afforded it by Section 27 of the 1934 Act, 15 U.S.C. § 78aa. Indisputably, the plaintiff's choice of forum is not an absolute and uncontrolled privilege. Nevertheless, it may be stated as a general proposition that, unless the balance of convenience is clearly in favor of the defendants, the plaintiff's choice of forum should not be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67

S.Ct. 839, 91 L.Ed. 1055 (1947); Ford Motor Co. v. Ryan, 182 F.2d 329 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950).

What District Judge (now Court of Appeals Judge) Irving R. Kaufman said in Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y.1958) is an apposite starting point:

While it is true that a transfer may be ordered under § 1404(a) upon a lesser showing of inconvenience than would be required to warrant a dismissal under the doctrine of forum non conveniens, Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, the burden nevertheless is upon the movant to show that the convenience of the parties and the interests of justice will be better served in the other district. Plaintiffs' right to choose the forum is still a relevant consideration, so that where the interests are evenly balanced transfer should be denied. Nor are judges required to draw hair lines to determine where the equities preponderate in a situation where they are nearly in balance. The moving party must make a clear-cut showing that when all the interests are considered, trial would more conveniently proceed and the interests of justice would be better served in the other district.

Thus more is required of the movant than the mere assertion that it may call a designated number of witnesses at the trial. Of greater importance to a judge in determining a motion of this type is the materiality of the matter to which these witnesses will testify.

As to this aspect of the matter, the court is required to make a qualitative and comparative assessment of the anticipated proofs. This is something more than a judicial numbers game of simply counting the prospective witnesses on each side.

There is no dispute over the controlling statutory criteria as judicially interpreted. The following decisions are illustrative:

*Motion for transfer denied*

Lykes Bros. Steamship Co. v. Sugarman, 272 F.2d 679 (2d Cir. 1959); S. E. C. v. Harwyn Publishing Corp., 232 F. Supp. 274 (S.D.N.Y.1964); Franklin v. Blaylock, 218 F.Supp. 261 (S.D.N.Y. 1963); Desousa v. Panama Canal Co., 202 F.Supp. 22 (S.D.N.Y.1962); Peyser v. General Motors Corp., 158 F.Supp. 526 (S.D.N.Y.1958); National Tea Co. v. The Marseille, 142 F.Supp. 415 (S.D.N.Y. 1956). Cf. United States Lines Co. v. MacMahon, 285 F.2d 212 (2d Cir. 1960).

*Motion for transfer granted*

Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); Axe-Houghton Fund A., Inc. v. Atlantic Research Corp., 227 F.Supp. 521 (S.D.N.Y. 1964); Ackert v. Ausman, 198 F.Supp. 538 (S.D.N.Y.1961); United States v. General Motors Corp., 183 F.Supp. 858 (S.D.N.Y.1960); Molloy v. Bemis Bro. Bag Co., 130 F.Supp. 265 (S.D.N.Y. 1955); Duffy v. United States, 114 F. Supp. 881 (S.D.N.Y.1953); Welch v. Esso Shipping Co., 112 F.Supp. 611 (S.D. N.Y.1953); Banachowski v. Atlantic Refining Co., 84 F.Supp. 444 (S.D.N.Y. 1949).

Obviously, the test by which the criteria may be applied to a specific case is incapable of exact definition. The variables render every motion for transfer unique. The court must make a reasonable appraisal between conflicting factors that admit of no quantitative measure. In the last analysis, the problem is one of particularized judgment.

This is well-illustrated by the present case where there is a sharp dispute as to the factual validity of each feature urged as relevant by the respective parties.

Substantial prejudice and grievous hardship caused by the granting or denial of the requested transfer have been predicted with plangent iteration by both sides. One cannot with certitude state which of these fears are chimerical or real. Experience suggests that the zeal of advocacy has tinctured the arguments with some hyperbole.

Whether or not there should be a transfer cannot depend on the fertility of counsel's imagination in conjuring up possible but improbable difficulties of proof.

*Idaho Contacts*

The following are the major Idaho contacts relied upon by the defendants as warranting the transfer of venue:

1. Magnuson resides in Wallace, Idaho.

2. Magnuson, at all material times, was vice-president, a director, and a substantial stockholder of Golconda and a director of Hecla. He was, until April 1, 1964, vice-president and a director of Lucky Friday Silver-Lead Mines Company.

3. Golconda is an Idaho corporation. It has its sole office and place of business in Wallace, Idaho, where it shares an office with an accounting firm operated by Magnuson. Golconda, which is not an operating company, has assets consisting largely of cash and a portfolio of securities, including 82,000 shares of Hecla and 140,000 shares of Lucky Friday.

4. Hecla, a Washington corporation, has its principal place of business in Wallace, Idaho. It is in the silver mining business.

5. Lucky Friday, an Idaho corporation (until April 1, 1964, when it merged into Hecla), had its principal place of business in Wallace, Idaho. It was in the silver mining business.

6. The alleged fraud was launched in Idaho.

7. The corporate records of Golconda, Hecla and Lucky Friday, as well as Magnuson's personal records which will be required in the action, are located in Wallace, Idaho.

8. Defendants put great emphasis on the fact that it will be necessary for them to call twenty-four witnesses at the trial. The names of each of these witnesses are set forth in the Magnuson moving affidavit, together with a résumé of the subject matter of their respective anticipated testimony. Of these twenty-four witnesses, twelve live or work in Idaho; one lives in Utah; nine live in Washington; and two live in New York.

These twenty-four witnesses fall into the following categories: seventeen are officers, directors or employees of Golconda, Hecla and Lucky Friday; three are shareholders not in the preceding category; one is a broker-dealer specialist in mining securities; two are registered representatives who handled certain securities transactions; and one is a securities expert.

The defendants vigorously argue that, to bring to and maintain these vitally necessary witnesses in New York would be highly expensive, most inconvenient, and seriously disruptive of Hecla's business and of the witnesses' own businesses.

9. According to the affidavit of Thomas R. Farrell, one of the defense attorneys, "nearly all of the witnesses to be called having knowledge of the essential facts in this case would not be subject to subpoena under the provisions of Rule 45(e) of the Federal Rules of Civil Procedure," if the trial were to be held in this district. As a result, it is claimed, "disputed facts would have to be proved by deposition," a highly undesirable mode of proof.

The numerous triable issues raised by the pleadings, according to the Farrell affidavit, relate to the affairs of Golconda, Hecla and Lucky Friday during a period of "several years" prior to the period covered by the complaint. The resolution of many of these issues requires "evidence of the state of mind of the directors, officers and stockholders of these three corporations." This, in turn, presents critically important questions of credibility,—questions that could not be fairly answered through the use of depositions.

10. There will be a long and protracted delay in bringing this case to trial in the Southern District of New York because of the crowded calendar conditions. By contrast, this case can be tried in the United States District Court for the District of Idaho, Northern Division, (where the trial calendar is current) at the term in which the case is filed or, at the latest, the following term.

In sum, it is the defendants' submission that the transfer should be ordered because they have made the requisite clear-cut demonstration of the parties' and witnesses' convenience and the interest of justice.

The plaintiff challenges the accuracy and pertinency of each of the Idaho factors relied upon by the defendants,— just as the defendants attempt to attenuate the New York nexus portrayed by the plaintiff.

*New York Contacts*

The following are the major New York contacts relied upon by the plaintiff as requiring a denial of the motion to transfer:

1. Hecla stock and Lucky Friday stock were registered and traded on the American Stock Exchange, at the material times.

2. The investigation leading to the filing of the complaint in this action was instituted and conducted by members of the staff of the plaintiff's Regional Office in the Southern District of New York.

The New York Regional Office—because it was near the locale of the al-

leged security violations and the sources of proof and because it had the necessary staff and facilities—was selected as the logical regional office to develop the facts leading to the filing of the complaint herein. The members of the plaintiff's staff located in New York City, having completed months of initial preparation, are those most familiar with the facts in this case. The investigatory material developed over many months by the plaintiff is in New York. Contrary to the defendants' contention, no other regional SEC office could handle this trial with any degree of effectiveness. On the contrary, the plaintiff asserts, the plaintiff's regional office in Seattle, Washington, has extremely limited facilities and staff and cannot now, without serious prejudice and undue inconvenience, assume responsibility for this action.

3. The plaintiff's investigation was precipitated by a suspicious pattern of trading on the American Stock Exchange in the securities of Lucky Friday and Hecla during the period preceding the public announcement on September 10, 1963, of a planned merger of these two companies. The alleged fraud was perpetrated in this district through the medium of the American Stock Exchange, located in this district.

The defense argues that the evidence relating to trading on the exchange can readily be adduced through documentary proof.

4. In prosecuting this action, plaintiff will be required to call as witnesses over 82 investors who purchased from and sold to the defendants shares of Lucky Friday and Hecla, respectively, and as to whom restitution is sought. Plaintiff represents that more than half of these investors reside in New York, New Jersey and Pennsylvania, whereas none reside within the District of Idaho, and only two of them reside within 100 miles of Coeur d' Alene.

The reply affidavit of James C. Sargent (p. 2) attacks the significance of the plaintiff's claim that a large number of investors will have to be called by the plaintiff, and states that the defendants will stipulate the testimony of the allegedly victimized investors.

5. Virtually all of the brokerage houses who acted for the allegedly defrauded stockholders have their principal places of business and records in New York City. Plaintiff states that it may be necessary for plaintiff to call as witnesses representatives of 41 brokers having their principal places of business and records in New York City (who acted for defrauded stockholders) as well as Commission investigators (who investigated the facts and who also reside in the New York area) and representatives of the American Stock Exchange (to establish the untimely and false filings of Form 4 reports).

The Sargent reply affidavit (pp. 3–5) disputes the necessity and materiality of the viva voce testimony of the brokerage witnesses, plaintiff's investigators, and the American Stock Exchange representatives, who allegedly would be called to the stand by the plaintiff. Moreover, the defense claims that much, if not all, of such evidence, to the extent it is relevant, could probably be stipulated.

The gist of the plaintiff's position is, therefore, that the practical necessities of its case—in terms of essential witnesses and exhibits—make it critically necessary to try the case in this district and not in Idaho.

While the defendants urge the Idaho location of twenty-four prospective witnesses as a reason for this motion, the plaintiff counters with the assertion that the defendants "show little in terms of convenience or necessity to justify such a move. As set forth in plaintiff's affidavit, a close examination of the list of defendants' purportedly necessary witnesses reveals at most an inconvenience to no more than five of these twenty-four witnesses should the trial be held in New York." (See analysis in paragraph "9" to "17" of the Marcus opposing affidavit.) On the other hand, defendants insist that all of these twenty-four wit-

nesses are necessary and material. (See the Sargent reply affidavit, pp. 5–6.)

In answer to the defendants' claim that all of the pertinent defense records are located in Wallace, Idaho, the plaintiff points out that "not only would most of Magnuson's personal records be irrelevant to this case, but plaintiff already has in its possession copies of most or all of the records material to its case." The defendants dispute the accuracy of this contention by the plaintiff. (See the Sargent reply affidavit, p. 6.)

The plaintiff does not deny that a trial in the District of Idaho possibly can be commenced earlier than a trial in this district. However, the plaintiff asserts that the defendants "have not shown that a delay in the trial of this action will be substantially detrimental to them."

■ Calendar conditions are accorded some, but not decisive, weight by the courts in considering motions for transfer. See United States v. Scott & Williams, 88 F.Supp. 531, 535 (S.D.N.Y. 1950); Peyser v. General Motors Corp., 158 F.Supp. 526, 530–531 (S.D.N.Y. 1958); United States v. General Motors Corp., 183 F.Supp. 858, 860 (S.D.N.Y. 1960).

*Conclusion*

Whether the trial be conducted in New York or in Idaho, there is bound to be inconvenience, expense and problems of logistics to one or the other parties and their witnesses. The court has evaluated and compared each and every factor and counter-factor in terms of relative hardship, convenience, expense and fairness. The nature of this litigation is such that there can be no Solomonic decision satisfactory to both sides.

■ The issues raised by this motion are closely contested. On this record, the court finds and concludes that the defendants have not sustained their burden of proving clearly that the balance of convenience preponderates in their favor to the extent of justifying the court in nullifying the plaintiff's choice of forum.

The motion is denied. So ordered.