**THOMSON & McKINNON, a Limited Partnership, Plaintiff,**

v.

**Judson T. MINYARD, Defendant.**

**No. 68 Civ. 3138.**

United States District Court
S. D. New York.

Oct. 21, 1968.

574

Hall, McNicol, Marett & Hamilton, New York City, for plaintiff; Charles J. Egan, Jr., New York City, of counsel.

Dunnington, Bartholow & Miller, James M. Clabault, New York City, Charles L. Stewart, New York City, of counsel, and Wyche, Burgess, Freeman & Parham, Greenville, S. C., C. Thomas Wyche, Greenville, S. C., of counsel, for defendant.

## OPINION

HERLANDS, District Judge:

Defendant moves pursuant to 28 U.S.C. § 1404(a) (1964) for an order transferring the above-entitled action to the United States District Court for the District of South Carolina, Greenville Division. Defendant is a resident of that district; thus the action "might have been brought" in the proposed transferee district. The only question before this Court, therefore, is whether the standard determinants of transfer have been so clearly demonstrated to favor the District of South Carolina, that plaintiff's choice of forum should be disturbed. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Weighing all these factors pro and con, the Court concludes that transfer is warranted.

Defendant owns an automobile agency in Anderson, South Carolina. He had initiated many securities transactions through a Mr. Joe Weber, who at the time of the transaction in question was a registered account representative employed by plaintiff brokerage firm. Mr. Weber resides in South Carolina and maintains his office there.

On March 21, 1968, defendant executed an order with Weber to sell either 2,000 shares of Hyatt Corporation of America as defendant claims, or of Hyatt Corporation of Delaware [1] as plaintiff contends. Defendant received a confirmation from plaintiff that 2,000 shares of Hyatt Corp. of America had been sold at $45.00 per share; and defendant delivered to plaintiff at its Greenville, South Carolina branch Certificate #U682 representing 2,000 shares of Hyatt Corporation of America stock. A receipt for these delivered shares was given to defendant. Plaintiff then mailed defendant a check, dated March 27, 1968, in the amount of $89,070.00, representing the net sales proceeds. This check indicated that it was in payment of 2,000 shares of Hyatt Corp. of America.

Plaintiff alleges that the order it received in New York was for the sale of 2,000 shares of Hyatt Corp. (which was Hyatt Corporation of Delaware and not Hyatt Corporation of America) and that in fact it sold 2,000 shares of Hyatt Corp. of Delaware for defendant's account to Mitchum, Jones & Templeton,

1. In various documentary exhibits Hyatt Corporation of Delaware is called "Hyatt Corp. of Delaware," "Hyatt Corp.," and "Hyatt Corporation." Hyatt Corporation of America, at times, is named as "Hyatt Corp. of America." The Court will refer to the corporations as they were identified in the original documents.

Inc., a California brokerage firm. Plaintiff claims that a coding clerk erred in processing the order, with the result that the confirmation incorrectly detailed a sale of Hyatt Corporation of America instead of Hyatt Corporation of Delaware.

Plaintiff seeks evidentiary support for its position in the circumstance that Hyatt Corporation of America had, in September or October, 1967, changed its name to Hotel Equities Corporation and effected a 5-for-1 stock exchange, whereby one new share of Hotel Equities was issued for every five shares of Hyatt Corporation of America tendered. Since the price of Hotel Equities was approximately $20.00 per share (reflecting $4.00 per share of Hyatt Corporation of America) plaintiff reasons that manifestly there could be no mistake as to which stock was sold.

As evidence tending to substantiate his claim that he had sold Hyatt Corporation of America stock and not Hyatt Corporation of Delaware stock, defendant points to the fact that, at the time of the transaction in March, he owned less than 350 shares of Hyatt Corporation of Delaware stock; and, thus, defendant argues he could not have ordered plaintiff to sell 2,000 shares of that stock long. Defendant further contends that, upon notification by plaintiff that Hyatt Corporation of America had changed its name and had effected this reverse five-four-one split—a time after the March 21, 1968 transaction—defendant purchased through an unnamed San Francisco broker 2,000 shares of Hotel Equities stock, at an undisclosed price, in order to enable defendant to deliver to plaintiff 1,600 additional shares of Hotel Equities stock plus totaling 2,000 shares which defendant says he was obligated to deliver pursuant to the March 21, 1968 sale.

To addle the story further, the San Francisco broker apparently delivered to defendant 2,000 shares of Hyatt Corporation of Delaware stock. On the face of the certificate representing these 2,000 shares a pencil line is allegedly drawn through the engraved name; and the name "Hotel Equities" is substituted in pencil across the face of the certificate.

Finally, defendant attempts to buttress his factual and legal positions by emphasizing plaintiff's long delay between the confirmation date and the time defendant was notified of plaintiff's alleged error and, therefore, of defendant's failure to deliver the 2,000 shares of Hyatt Corporation of Delaware stock.

This confusion is compounded by still other complications. This suit was commenced originally in the New York state courts on June 7, 1968 when plaintiff obtained an order of attachment against defendant's New York property. On June 14, 1968, before substituted service upon defendant was effected, defendant Minyard started an action against Thomson & McKinnon in the South Carolina state courts seeking, in effect, a declaratory judgment as to his rights and liabilities arising out of the same transaction that is involved in the case at bar.

The South Carolina state action was removed by Thomson & McKinnon on July 3, 1968 to the United States District Court for the District of South Carolina. The New York state action was removed to this Court (the United States District Court for the Southern District of New York) on August 1, 1968. Thus, two lawsuits involving the same subject matter and the same parties are now pending.

Defendant in the New York action has also asserted three counterclaims: (1) a claim for a declaratory judgment based on the same facts; (2) a claim for damages arising from plaintiff's refusal to execute any securities transactions involving securities owned by defendant in plaintiff's custody; (3) a claim for damages arising from plaintiff's attachment of defendant's account with Harris, Upham & Co. The record in this Court does not indicate whether the action now pending in the District of South Carolina also involves the above-indicated counterclaims "(2)" and "(3)".

By way of affidavits, counsel for both plaintiff and defendant have detailed the prospective trial testimony. Each side has stressed the inconvenience of the other's choice of forum. There is no pat formula by which the question of witness convenience can be answered. The problem is one of particularized judgment based on the unique features of the specific case. S. E. C. v. Golconda Mining Co., 246 F.Supp. 54, 57 (S.D. N.Y.1965), petition for writ of mandamus denied sub nom. Golconda Mining Corp. v. Herlands, 365 F.2d 856 (2d Cir. 1966).

In formulating that judgment, the Court should not be persuaded merely by the number of prospective witnesses, but rather by the materiality and importance of their anticipated testimony. See, e. g. Wright v. American Flyers Airline Corp., 263 F.Supp. 865, 867 (D.S.C. 1967); S. E. C. v. Golconda Mining Co., supra; Jenkins v. Wilson Freight Forwarding Co., 104 F.Supp. 422 (S.D.N.Y. 1952).

The pivotal fact issue in this case revolves around the substance of the conversation between defendant and Weber leading to the sale of March 21, 1968. Considering the complaint, answer, counterclaims and various affidavits, one may reasonably forecast that the recollection of this vital conversation will be a subject of sharp controversy between defendant and Weber. Heavy reliance will probably be placed on collateral and circumstantial evidence to prove or disprove plaintiff's claims.

Aside from Weber's testimony, plaintiff's proofs apparently will consist, in major part, of its various business records and other evidence probative of the fact that the two corporations were not and could not have been confused. The latter point is supported, allegedly, by the circumstantial details that Hyatt Corporation of America had previously changed its name and that the market price of its shares was far below $45.00. The facts just adverted to, being matters of record, may however, be stipulated or are readily proved through documentary exhibits.

Similarly, business records may establish defendant's claims that he did not own a sufficient number of Hyatt Corporation of Delaware shares to sell 2,000 of such shares long and that confusion was likely, as evidenced by the errors of Minyard's California broker.

The other witnesses whose testimony is indicated as necessary are not apparently in a position to add to the affirmative case of either party, Their prospective testimony would appear to have a largely negative thrust, tending to rebut the inferences that the opposing party desires to have the trier of fact drawn from documentary and other essentially indisputable facts.

It is neither appropriate nor necessary, however, for the Court to decide this motion on the basis of what the present record leads it to believe are vital, ultimately material witnesses. The various affidavits do not disclose that the witness testimony—whether analyzed quantitatively or qualitatively—will or will not be, undeniably, facilitated and the witnesses convenienced, by the proposed transfer.

That the element of witness convenience is not so clear-cut as to be determinative, does not, however, require the motion to be denied. Other factors must be considered. Indeed, as will be shown, these other factors are so persuasively important that the Court concludes that the motion should be granted.

For one, party convenience will be served by the transfer. Defendant is an individual and apparently is sole owner and operator of an automobile agency which requires close, personal supervision; and he has no personal contacts with New York. Plaintiff is a partnership with offices throughout the country, including one in the transferee district. The absence of a few persons at a time from their employment during the trial of this case would not appear to be as burdensome to plaintiff as defendant's

absence from his business would be to him.

■ Of great significance, in the context of this lawsuit, is the fact that the transferee district will be able to try the lawsuit in the immediate future while the trial calendar in the Southern District of New York is congested and of considerable length. Though this Court does not believe it proper to decide a motion to transfer solely on the basis of the comparative delay in reaching trial, see, e. g., S. E. C. v. Golconda Mining Co., supra, 246 F.Supp. at 60; United States v. General Motors Corp., 183 F.Supp. 858, 860 (S.D.N.Y.1960), where the case is of such nature that a speedy trial is of extraordinary necessity for complete justice, this factor has been recognized as entitled to very substantial consideration. See, e. g., Parsons v. Chesapeake, & Ohio Ry., 375 U.S. 71, 73, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963); A. Olinick & Sons, v. Dempster Brothers, Inc., 365 F. 2d 439, 445 (2d Cir. 1966); Schneider v. Sears, 265 F.Supp. 257, 267 (S.D.N.Y. 1967); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523–524 (S.D.N.Y.1964); Glenn v. Trans World Airlines, Inc., 210 F.Supp. 31, 35 (S.D.N.Y.1962).

Defendant's account with Harris, Upham & Co. has been attached by plaintiff. Defendant asserts that he is unable to effect any transactions with respect to that account and that this situation has imposed severe economic hardship upon him.

Moreover, other securities of defendant are now in the custody of plaintiff and plaintiff allegedly will not effect any transactions with respect to them. As a result, defendant is substantially prejudiced in the conduct of his trading activities.

If the case remains on the congested trial calendar of the Southern District of New York,[2] the ensuing long delay, as compared to the opportunity for a speedy trial available in South Carolina, would appear to be very costly—far greater than in the ordinary case—to both defendant and plaintiff. Under the circumstances, an early resolution of this controversy is an objective that would be accomplished by a transfer.

The circumstance that the pending action in the District of South Carolina is similar to this lawsuit in all respects requires comment. While there may be some question as to which lawsuit was prior in time because the South Carolina action was begun after the New York order of attachment issued but before the substituted service was completed, the District of South Carolina was, technically speaking "seized" of the lawsuit prior to the Southern District of New York or, for that matter, the New York State Supreme Court. This follows from the fact that the South Carolina removal occurred before service in the New York action was completed and thus the conduct of the lawsuit, including joinder of issue and discovery could and did begin earlier in the District of South Carolina.

■ The pendency of another, similar action in the transferee district has been said to be an important factor in the exercise of the Court's discretion, see, e. g., Schneider v. Sears, supra, 265 F. Supp. at 266–267, and cases cited n. 33. The Court believes that this is another (though perhaps not independently determinative) factor which, when added to the others alluded to, convinces the Court to grant the motion.

The motion to transfer is granted. So ordered.

---

2. As of September 30, 1968, there were pending on the Civil Docket of the Southern District of New York 11,584 cases, of which 2,609 were on the Civil Trial Calendar. Report of Chief Judge Sidney Sugarman to the D'strict Judges of the Southern District of New York on the Business of the Court (Oct. 17, 1968).