Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware, as Receiver of National Heritage Life Insurance Company in Rehabilitation and Continental Stock Transfer & Trust Company, Plaintiffs,

v.

NATIONAL HOUSING EXCHANGE INC., APX Mortgage Services, Inc., Resource Asset Management, Inc., Midwest Independent Bank, Midwest Mortgage Servicing, L.L.C., Jan Starr, Michael Lauzon, Jan Schneiderman, Robert Gorski and Nadine Allen, Defendants.

No. 95 Civ. 1594.

United States District Court,
S.D. New York.

July 7, 1995.

Michael S. Oberman, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, for plaintiff Williams.

Andrew Dash, Berlack Israels & Liberman, New York City, for plaintiff Continental Stock.

Jeffrey H. Hornstein, Holleb & Coff, Chicago, IL, for defendants National Housing, Resource Asset, and Jan Starr.

*MEMORANDUM AND ORDER*

BAER, District Judge.

Defendants National Housing Exchange Inc. ("Exchange"), Resource Asset Management, Inc. ("RAM"), and Jan Starr (collectively, the "moving defendants") move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Northern District of Illinois. For the reasons indicated below, the motion is granted in part and denied in part.

## I. BACKGROUND

Before the two plaintiffs brought the instant action in March 1995, RAM had initiated suit against one of those plaintiffs, Continental Stock Transfer & Trust Company ("Continental"), in the Northern District of Illinois in January 1995. RAM's suit seeks a declaratory judgment holding that RAM has the contractual right to serve as "sub-servicer" of mortgages that collateralize debentures for which Continental acts as trustee. RAM filed suit in response to Continental's

claims that Continental had the right to all the documentation and cash related to the mortgages that RAM was then—and still is—servicing.

In its answer to the amended complaint in the Illinois action, Continental stated, among other things, that the relief sought by RAM could not be granted in the Illinois action because other necessary parties had not been named in that action; instead, asserted Continental, only the instant New York action it had just filed in March included all necessary parties. Briefly, Continental states that determining whether RAM has the right to sub-service the mortgages first requires the resolution of several issues concerning events that took place in 1994: (1) whether Continental's purported termination of APX Mortgage Services, Inc. ("APX") as Servicer of those mortgages was effective; (2) whether Midwest Mortgage Servicing, L.L.C. ("MMS") became Servicer of the mortgages when it succeeded to the mortgage banking business of APX; and (3) whether RAM became sub-servicer of the mortgages pursuant to its agreement with MMS.

In the instant New York action, Continental was joined by plaintiff Donna Lee H. Williams, Insurance Commissioner of the State of Delaware ("Williams"), which had been appointed as the receiver of National Heritage Life Insurance Company ("Heritage"). Heritage had purchased the subject debentures from National Housing Exchange, Inc. ("Exchange"). In the first two causes of action of the New York complaint, Williams and Continental seek primarily declaratory relief holding that Continental now possesses all the authority that APX and Exchange (and MMS as APX's successor and RAM as MMS' appointed sub-servicer) at one time possessed.

In addition, Williams, believing that the initial sale of the debentures to Heritage was fraudulent, sues Exchange, APX, and their respective control persons (Jan Starr, Michael Lauzon, and Jan Schneiderman of Exchange and Robert Gorski and Nadine Allen

of APX) under the federal securities laws and for fraud and negligent misrepresentation. Williams also sues APX and RAM for conversion, alleging that they withdrew some of the money that had been handled in servicing the mortgages. Finally, Williams sue APX for breach of contract relating to APX's duties under the Indenture. These additional claims of Williams constitute the third through tenth causes of action of the New York complaint.

## II. DISCUSSION

Continental's claims in the instant action are compulsory counterclaims to RAM's Illinois complaint, and to effectuate Rule 13(a) of the Federal Rules of Civil Procedure, are hereby transferred to the Northern District of Illinois.[1] Fed.R.Civ.P. 13(a). Continental will likely pursue those claims in the Illinois action, where it has answered, among other things, that these claims be "incorporated by reference" should they be deemed compulsory counterclaims. Continental's Answer Am.Compl. at 6, ¶ 28. To the extent Williams joins in Continental's claims, Williams' claims will be transferred to the Northern District of Illinois; otherwise, duplicative litigation would ensue, RAM would have to litigate the identical issue of its asserted right to subservice the mortgages in two Courts, and inconsistent rulings might result. *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F.Supp. 1308 (D.Nev.1982). The Illinois action was the first one filed that addressed the sub-servicing rights, and although RAM did not name Williams as a defendant, Williams could have simply sought to intervene in that action pursuant to Rule 24. Continental will not be permitted to evade the compulsory counterclaim and first-filed rules by bringing suit with an additional party and adding different defendants and different claims where the initial action does not preclude the intervention and/or joinder of all necessary parties

---

1. I transfer, rather than dismiss without prejudice; because Continental and Williams obtained a Temporary Restraining Order from this Court on May 11, 1995 enjoining RAM from, among other things, destroying records and making payments without consent of other parties until the issue of RAM's asserted subservicing rights is resolved. That TRO remains in effect, as does the $250,000 bond that was posted to secure RAM against possible damage.

and that forum can exercise jurisdiction over same.

The Temporary Restraining Order I signed on May 11 enjoining RAM remains in effect as does the $250,000 bond posted to secure RAM against any damages it may thereby incur. Their eventual disposition will depend on the rulings of the Northern District of Illinois.

■■■ Williams' claims asserting fraud, negligent representation, and violation of securities laws in the sale of the debentures, meanwhile, do not implicate RAM. Pls.' Mem.Opp'n Mot. at 3 ("RAM did not even exist before December 1, 1994—a year after the sale underlying most of the claims."). Moreover, the resolution of its claim for conversion against RAM and APX, and its breach of contract claim against APX, does not depend on whether RAM possessed the right to sub-service the mortgages. Consequently, I do not find, as this Court did in *Can–Base Prods., Ltd. v. Portrait Records*, 445 F.Supp. 777, 779 (S.D.N.Y.1978), that "what is already transpiring in the transferee court can be easily expanded to accommodate the issues raised here." Whether these remaining claims should be transferred to the Northern District of Illinois therefore will not turn to any extent on the existence of the Illinois action. I will instead undertake an analysis of the factors that control whether a case should be transferred under 28 U.S.C. § 1404(a) where no related action is pending in the proposed transferee district.[2]

■■■ Williams cites as events militating against the transfer the facts that Continental was solicited to become the trustee in the Southern District of New York, "[n]egotiations of the terms and conditions and preparation of the Indenture occurred in New York City," [3] and the "Indenture was executed and delivered, and the purchase of the Debentures was closed, in this District."

Pls.' Mem.Opp'n Mot. at 2. Williams correctly characterizes those activities as "events giving rise to the instant suit." The alleged deficient servicing of the mortgages and conversion of money in connection with the servicing, which occurred in Illinois, meanwhile, also gave rise to this suit, as did alleged fraudulent statements that occurred during the negotiation of the Indenture in New York. To the extent the latter occurred in the Southern District, they would weigh further against transfer. The totality of these Southern District activities also indicates that this case is related in significant part to the Southern District, and, as a result, Williams' choice of forum will be afforded significant deference even though this District does not constitute Williams' "home turf" of Delaware. *See Tracy v. Consolidated Rail Corp.*, 723 F.Supp. 1051 (D.Dela.1989).

In support of their motion, defendants RAM, NHE, and Starr stress that "[k]ey issues" in Williams' claims concern the "quality and contents of a portfolio of approximately 700 mortgage files and . . . the activities of the Illinois-based defendants who have serviced the mortgages." Defs.' Mem.Supp. Mot. at 2. The mortgage files, the moving defendants note, are held within the Northern District of Illinois, the "non-party banks whose records reflect the servicing activities are located in Chicago, Illinois," and four of the defendants are domiciled in the Northern District of Illinois, while two other defendants are located "three times closer to Chicago than to New York." *Id.* In addition, the moving defendants state that the "principals and former employees" of APX will provide particularly important testimony given Williams' claims that APX misrepresented the completeness of the mortgage files and improperly serviced the mortgages. Those individuals are also located in the Northern District of Illinois.

---

**2.** These factors are the same as when a related action *is* pending, except, of course, they do not include the potent considerations of duplicative litigation and inconsistent rulings that color the former situation.

**3.** By merely indicating "New York City," Williams leaves uncertain, perhaps intentionally, whether such activity occurred in the New York City counties of New York and the Bronx, which are within the Southern District, or in New York City's Kings, Queens, and Richmond counties, which fall within the Eastern District of New York. *Royal Swan Navigation Co. v. Global Container Lines, Ltd.*, 868 F.Supp. 599, 606 n. 8 (S.D.N.Y.1994).

Williams responds that five of the defendants who live closer to Chicago than to New York consent to litigate in New York. Two of these parties are APX's control persons, Gorski and Allen, who the moving defendants above acknowledge will provide key testimony. By so consenting, these five parties remove from the section 1404(a) balancing exercise their inconvenience that would otherwise support the moving defendants' transfer motion. *See Marks v. Fireman's Fund Ins. Co.,* 109 F.Supp. 800, 803 (S.D.N.Y.1953) ("[I]t should be emphasized that defendant may not complain on this motion about inconvenience to plaintiff's witnesses."). Moreover, one defendant, Schneiderman, resides in the state of New York and apparently would be so inconvenienced by the transfer that she unsuccessfully sought leave of this Court to entertain her motion for summary judgment prior to the instant motion.

As for the convenience of witnesses, Williams correctly notes that "the events leading up to the closing of the transaction ... will be [a] major fact area[ ] in this case," Pls.' Mem.Opp'n Mot. at 10, in light of Williams' assertions of fraud, negligent misrepresentation, and securities law violations in connection with the issuance of the debentures. Williams states that at least ten non-party witnesses possessing such relevant information "are based in New York." *Id.* The moving defendants term this a "laundry list" that is "nothing more than a transparent attempt to name as many New Yorkers as [Williams] can." Defs.' Reply Mem.Supp. Mot. at 5. The moving defendants caution that " '[c]ourt[s] should not be persuaded merely by the number of prospective witnesses, but rather by the materiality and importance of their anticipated testimony.' " *Id.* at 6 (quoting *Thomson & McKinnon v. Minyard,* 291 F.Supp. 573, 576 (S.D.N.Y. 1968)). The moving defendants further state that Williams has "fail[ed] to describe the anticipated testimony of these [witnesses] or how their testimony would tend to prove or disprove [Williams'] claims of misrepresentations and breaches by APX, [Exchange] and their alleged 'controlling persons.' " *Id.* In fact, Williams provided a sufficient description of anticipated testimony and, for one

witness, even provided a declaration as to the breadth of his knowledge.

■ The moving defendants have failed to shoulder their substantial burden in demonstrating that Williams' remaining claims should be transferred from Williams' choice of the Southern District. The motion to transfer the third through tenth causes of action of the New York complaint is therefore denied except for Williams' claim against RAM for conversion, which is contained in the complaint's fifth cause of action. That claim has little relation to the Southern District as RAM was not involved in the alleged fraudulent activity that took place in connection with the issuance of the securities in New York.

## III. CONCLUSION

Continental's claims and Williams' claims in the first two causes of action of the New York complaint are transferred to the Northern District of Illinois. The TRO I signed on May 11 and the $250,000 bond posted in connection therewith remain in effect. The motion to transfer Williams' remaining claims, that is, those constituting the third through tenth causes of action of the New York complaint, is denied, except that Williams' claim against RAM for conversion, which is contained in the fifth cause of action of the New York complaint, is transferred to the Northern District of Illinois.

Williams will notify all parties who remain before this Court that a pretrial conference will take place in Courtroom 17B between 12:30 and 1:30 p.m. on Thursday, July 13 where a pretrial scheduling order that details the times for discovery and additional motions will be drafted.

**SO ORDERED.**