Paul J. PEYSER, Plaintiff,

v.

GENERAL MOTORS CORPORATION
and E. I. Du Pont De Nemours
and Company, Defendants.

Arlyne ZUCKER, a stockholder of General Motors Corporation, suing on behalf of herself and all other stockholders similarly situated and on behalf of and in the right of General Motors Corporation, Plaintiff,

v.

GENERAL MOTORS CORPORATION
and E. I. Du Pont De Nemours
and Company, Defendants.

Rita GOTTESMAN and Maria Mattiello,
Plaintiffs,

v.

GENERAL MOTORS CORPORATION
and E. I. Du Pont De Nemours
and Company, Defendants.

United States District Court
S. D. New York.
Jan. 24, 1958.

Netter & Netter, New York City, Edward Rothenberg, Arthur Netter, New York City, of counsel, for plaintiff Paul J. Peyser.

Morris J. Levy, New York City, for plaintiff Arlyne Zucker.

William Rosenfeld, New York City, for plaintiffs Rita Gottesman and Maria Mattiello.

George A. Brooks, New York City, for defendant General Motors Corporation.

Frank H. Gordon, New York City, Hugh B. Cox, Washington, D. C., Covington & Burling, Washington, D. C., of counsel, for defendant E. I. Du Pont De Nemours and Company.

IRVING R. KAUFMAN, District Judge.

Defendant, E. I. du Pont de Nemours and Company moves to transfer three actions pending against it in this district to the United States District Court, for the District of Delaware, sitting at Wilmington, Delaware, pursuant to Section 1404(a), 28 U.S.C.A.[1]

All three suits, which shall be considered together for purposes of this motion, arise out of du Pont's ownership of approximately 25% of the total outstanding common stock of defendant, General Motors Corporation, which stock ownership was recently found by the Supreme Court, United States v. E. I. Du Pont De Nemours & Co., 1957, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057, to violate Section 7 of the Clayton Anti-Trust Act. 15 U.S.C.A. § 18.

These are derivative suits by stockholders of defendant, General Motors, seeking to recover on behalf of the corporation from defendant, du Pont, substantial profits which accrued to the latter out of transactions between the two corporations which allegedly violated both the Clayton Act, 15 U.S.C.A. § 12 et seq. and du Pont's fiduciary obligation as controlling stockholder. Two of the complaints[2] also seek damages for alleged overpayment by General Motors on the contracts.

---

1. Section 1404(a) provides:
    "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

2. Zucker v. du Pont and General Motors and Gottesman and Mattiello v. du Pont and General Motors.

All of the plaintiffs are New York residents except plaintiff, Maria Mattiello, who resides in New Jersey.

Defendant du Pont is a Delaware corporation having its principal place of business in Wilmington, Delaware. Its production and sales activities are carried on in many states and it maintains an office in the Southern District of New York.

General Motors, the nominal defendant, is a Delaware corporation, with its principal offices in New York and Detroit. In its affidavit General Motors assets that it has 35 operating divisions in the United States, located in 21 cities. Since none of these operating divisions is centered in the Southern District of New York or the District of Delaware, General Motors neither joins in nor opposes the motion to transfer, but rather takes the position that it is a decentralized organization which will be greatly inconvenienced by suit in any jurisdiction.

■■■ In resolving a motion of this kind I must weigh the convenience of trial in New York as against trial in Wilmington to determine in which place the trial can better be conducted without oppression to either party.[3]

■ It is asserted on behalf of du Pont that inasmuch as Wilmington, Delaware, is the situs of its principal place of business and the place where its Board of Directors meet and also the location of its principal administrative and executive offices, convenience of the parties and the ends of justice will be better served by a transfer of the trial to that city. More specifically, it is alleged that all the company's files and records except those currently in use in the branch offices and plants throughout the country are maintained in its main offices in Wilmington and that most of the witnesses whom the moving defendant will have occasion to call in its behalf are employed by du Pont in or around Wilmington. It is du Pont's position that if compelled to bring these witnesses to New York for trial it will not only bear increased expenses but the absence of these employees from Wilmington would disrupt the normal operations of the company and would result in substantial expense, inconvenience and confusion.

Du Pont makes a similar assertion in regard to its records, contending that transportation of the bulky files would be costly and further expense would be caused by the need to rent additional space to house such files in New York.

The affidavit of plaintiff, Paul J. Peyser,[4] answers du Pont's assertions by alleging that in order to establish their cases plaintiffs intend to call du Pont's competitors in the finishes and fabrics fields. These witnesses will testify as to their attempts to sell to General Motors and will be prepared to compare their products with du Pont's from the standpoint of price, quality and service. He cites Thomas' Registry of American Manufacturers which indicates that none of these competitors is located in Wilmington. Of approximately 45 competitors of du Pont in the

3. The criteria to be considered were laid down in the forum-non conveniens case of Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. They are still relevant to cases under § 1404(a). Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789. The most important factors are (1) relative ease of access to sources of proof; (2) availability of process for compelling attendance of unwilling witnesses and the convenience and cost of obtaining willing witnesses; (3) the effect of prolonged trial on defendant's business; (4) the various public interests involved.

See Kaufman, Observations on Transfers under Section 1404(a) of the New Judicial Code, 10 F.R.D. 595 (1951); Further Observations on Transfers under Section 1404(a), 56 Colum.L.Rev. 1 (1956).

4. The three suits all being derivative stockholder actions on behalf of General Motors the proof required on the part of all of the plaintiffs would be the same. Therefore, the allegations in the Peyser affidavit are equally applicable to the remaining plaintiffs.

fabrics field, located in 26 cities, 17 are in and around the City of New York. Of approximately 50 enamel competitors in 26 cities, 8 are in and around the City of New York. The affidavit further asserts that because of du Pont's dominant position in these two fields, many of the competitors may be reluctant to testify against it. If so, it is contended, the 100 mile limitation on subpoenas provided in Rule 45(e), Fed. Rules Civ.Proc. 28 U.S.C.A., would prove a greater handicap in Delaware than in New York.

The Peyser affidavit further asserts that du Pont's fabrics and finishes department operates 11 plants, none of which is located in Wilmington, Delaware. Three of these plants are located in Parlin, New Jersey, Fairfield, Connecticut, Newburgh, New York; all of which are within a 60 mile radius of New York City. Most of the other 8 plants are closer to New York City than they are to Wilmington.

Indeed, du Pont's affidavit admits that the sales of fabrics and finishes were handled by the Detroit Office. Negotiations were conducted by sales personnel of that office with purchasing representatives of General Motors whose offices also are in or near Detroit. The contracts were effectuated in Detroit and filed there. Thus du Pont takes the position that the business records relating to sales of finishes and fabrics are located in Wilmington "and/or" Detroit and the responsible personnel are in Wilmington and Detroit.

■ While it is true that a transfer may be ordered under § 1404(a) upon a lesser showing of inconvenience than would be required to warrant a dismissal under the doctrine of forum non-conveniens, Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, the burden nevertheless is upon the movant to show that the convenience of the parties and the interests of justice will be better served in the other district. Plaintiffs' right to choose the forum is still a relevant consideration, so that where the interests are evenly balanced transfer should be denied. Nor are judges required to draw hair lines to determine where the equities preponderate in a situation where they are nearly in balance.[5] The moving party must make a clear-cut showing that when all the interests are considered, trial would more conveniently proceed and the interests of justice would be better served in the other district.

■ Thus more is required of the movant than the mere assertion that it may call a designated number of witnesses at the trial. Of greater importance to a judge in determining a motion of this type is the materiality of the matter to which these witnesses will testify. National Tea Company v. The Marseille, D.C.S.D.N.Y.1956, 142 F. Supp. 415, 416; Jenkins v. Wilson Freight Forwarding Co., D.C.S.D.N.Y. 1952, 104 F.Supp. 422, 424; Keller-Dorian Colorfilm Corp. v. Eastman Kodak Co., D.C.S.D.N.Y.1949, 88 F.Supp. 863, 866.

The movant should endeavor to provide the court with a list of its principal witnesses and their locations, along with a brief statement of the matter to which it is anticipated they will be called upon to testify. Though I recognize that it is somewhat difficult at this stage of the proceeding for the parties to anticipate with any degree of accuracy their needs as to the number and character of witnesses they will ultimately use, it is nevertheless incumbent upon the moving

---

5. "The choice of venue is to be determined by a preponderance of the facts and the burden is on the moving party. To attempt to resolve the niceties involved in balancing the relative conveniences and inconveniences of all of the parties to any degree of certainty, resort must be had to an apothecary's scale and a crystal ball; neither of which implements are available to this court." United States v. E. I. du Pont de Nemours & Co., D.C.N.D.Ill.1950, 87 F. Supp. 962, 965; see also Frank, J. in Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, 331, certiorari denied 1950, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624.

defendant to show by trial in New York it will·be greatly inconvenienced in the production of witnesses and documents. In this case 6 potential witnesses are suggested by du Pont. Of the 6, only 4 are from the Wilmington area, the other 2 residing in Detroit. From the wide-spread nature of du Pont's operations I may assume that many of its other witnesses will be drawn from across the country. This conclusion is supported by du Pont's affidavits which assert that other witnesses required for the defense of the action "will almost certainly be employed in the Fabrics and Finishes Division of the Company and located either in Wilmington or places other than the Southern District of New York." To grant the motion on this meager showing that the attendance of 4 company officers from Wilmington is required at trial together with the vague assertion that other witnesses elsewhere in the country might also be required would be tantamount to dispensing with the showing of inconvenience required by long standing authority.

On the basis of du Pont's affidavits it is most reasonable to infer that many of the witnesses and documents it will require are located in and around the Detroit, rather than the Wilmington, area. In this regard I consider it significant that in the Government's anti trust action against defendants (upon which the instant suits are based) a preliminary motion to transfer the trial from Chicago to Wilmington was denied. United States v. E. I. du Pont de Nemours & Co., D.C.N.D.Ill.1950, 87 F. Supp. 962, certiorari and mandamus denied 339 U.S. 941, 70 S.Ct. 791, 94 L.Ed. 1357, appeal dismissed 1950, 339 U.S. 959, 70 S.Ct. 1002, 94 L.Ed. 1370. It was noted at that time that material records pertaining to the issues involved were located in Detroit and that in any event the records and witnesses would have to be transported either to Wilmington or Chicago. Observing that Detroit was geographically closer to Chicago than to Wilmington, Judge La Buy found that a transfer "would probably cause as much inconvenience to some of the parties and their witnesses as it would convenience others, and a transfer would not be in the interests of justice." Id., 87 F.Supp. at page 965. Such considerations as impelled Judge La Buy to arrive at this determination are equally compelling here. Furthermore, I might note that whereas in the prior suit defendants were burdened with transporting their witnesses and documents from Wilmington to Chicago, in the instant action a trial in New York would be considerably less an imposition on defendant in view of the relatively shorter distance between Wilmington and New York.

It should be emphasized also that this is not a case involving local interests, but is rather nationwide in its scope. See United States v. National City Lines, 1948, 334 U.S. 573, 591, 68 S.Ct. 1169, 92 L.Ed. 1584; Keller-Dorian Colorfilm Corp. v. Eastman Kodak Co., D.C.S.D.N.Y.1949, 88 F.Supp. 863, 865; United States v. Scott & Williams, Inc., D.C.S.D.N.Y.1950, 88 F.Supp. 531, 535. General Motors and du Pont are two of the largest corporations in the United States, with plants and offices scattered throughout the country. Trial in any jurisdiction will prove costly and inconvenient and will require the transportation of records and witnesses. In light of the fact that both of these corporations maintain large offices in New York, it is impossible to say that this district will not provide at least as convenient a forum as the District of Delaware. Nor do I find particularly persuasive the argument advanced by du Pont that heavier trial calendars in New York would substantially delay final disposition of the matter. Though under § 1404(a) the court may consider the condition of the dockets in the two districts, Fannin v. Jones, 6 Cir., 229 F.2d 368, certiorari denied 1956, 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465, it is never a factor to which great weight is assigned. United States v. Scott & Williams, Inc., D.C.S.D.N.Y.1950, 88 F.Supp. 531, 535. Furthermore, in light of the recent ac-

complishments in clearing the calendars of this district, I find it to be a consideration of little or no importance.[6]

The motions to transfer are accordingly denied. So ordered.

6. In a letter supplemental to its affidavits (dated January 10, 1958) du Pont cites as an additional reason for the transfer the fact that a fourth action based on the same facts, Singer v. du Pont and General Motors, has been instituted in the District of Delaware. While the courts may consider the existence of a pending similar action in the other district, this is never of controlling importance. In all of the cases cited to me by du Pont the other factors considered by the court were sufficient in themselves to warrant transfer. Nor does du Pont cite any case where a prior action was transferred to a district where a later action was instituted. In Caldwell Manufacturing Co. v. Unique Balance Co., D.C. S.D.N.Y.1955, 18 F.R.D. 258, both actions were commenced on the same day. But there the motion was granted primarily on the ground that the plaintiff had failed to name an indispensable party in the action in the transfer or district.