George SHELLEY, Plaintiff,

v.

THE MACCABEES, Emile A. Haar, David A. Hersh, Robert E. Morris, R. B. Twogood, T. L. Kester, L. F. Ayer, C. Robert Young, A. F. Devine and Joseph A. Navarre, Defendants.

Civ. No. 20123.

United States District Court
E. D. New York.

Feb. 23, 1961.

See also 26 F.R.D. 395.

Manning, Hollinger & Shea, New York City, for plaintiff, Bruce A. Hecker, New York City, of counsel.

Watters & Donovan, New York City, for defendants The Maccabees and Emile A. Haar, Francis A. McGrath, Brooklyn, N. Y., of counsel.

ZAVATT, District Judge.

This is a motion by the only defendants served (two out of a total of ten) to transfer this case to the United States District Court for the Eastern District of Michigan (Southern Division) pursuant to 28 U.S.C. § 1404(a). It illustrates some of the problems (of the litigant's own making) which the courts encounter in diversity cases, having one plaintiff and multiple defendants who are citizens of several states.

The plaintiff, a citizen of New York State residing in Nassau County, was the Chairman of the Board and a director of the defendant, The Maccabees (hereinafter referred to as the Society), a fraternal insurance society incorporat-

ed and having its principal place of business in the State of Michigan and licensed to do business and having an office in the State of New York. The plaintiff was also a regional officer in charge of the New York office of the Society and, in addition, maintained an insurance agency of his own which handled all insurance sales made by the Society in the New York Metropolitan region. The plaintiff claims to have the following contracts with the Society: one contract under which the Society is claimed to have agreed to buy certain commissions due and to become due to the plaintiff for the sum of $1,198,000; another contract whereby the Society and The Great Camp of New York (the New York Chapter of the Society) agreed to purchase the assets and the good will of the plaintiff's insurance agency for $1,000,000; an employment contract under which the plaintiff was manager of the insurance activities of the Society in the states of New Jersey, Connecticut and Rhode Island. He claims, further, to have been the Great Commander of the New York Chapter of the Society with an annual salary of $7,400. He claims further that his annual salary as Chairman of the Board of the Society was $50,000.

The Society is claimed to have canceled the contract to purchase the commissions for $1,198,000; to have canceled its participation in the contract to purchase the plaintiff's good will and to have revoked the charter of The Great Camp, the other party to the contract, all to the plaintiff's damage in the sum of $1,000,000 (and the incidental loss of his $7,400 salary as the Great Commander of The Great Camp); to have canceled the agreement with the plaintiff whereby he was in charge of the activities of the Society in New Jersey, Connecticut and Rhode Island resulting in damages to the plaintiff of $3,000,000; to have suspended plaintiff as Chairman of the Board of the Society at a loss of his annual salary of $50,000. The plaintiff claims that the Society was wrongfully induced to take these several steps by the officers and directors of the So-

ciety and another individual, Navarre, who is alleged to be a special insurance consultant to the Society and formerly Commissioner of Insurance of the State of Michigan. The plaintiff claims further that the acts of the individual defendants in inducing these breaches of contract by the Society and other acts of a nefarious nature committed by these individual defendants (including libel and slander) have ruined him in his business and reputation to the extent of $6,000,000.

The plaintiff instituted several actions:

*Action No. 1.* September 4, 1959. An action for wrongful interference with contractual relations against ten defendants (the Society and nine individual inducers) in the Supreme Court, Nassau County, New York, for $11,198,000. Only two defendants were served, to wit: the Society and Emile A. Haar, a director and the Secretary-Treasurer of the Society, who apparently, was a citizen of New York residing in Buffalo. This action was removed to this court September 24, 1959 and a motion to remand was denied by Chief Judge Bruchhausen November 10, 1959. 180 F.Supp. 517.

*Action No. 2.* September 4, 1959. An action in the Supreme Court, New York County, against the Society for breach of the commissions contract and the good will contract seeking damages in the total sum of $2,198,000. This action was removed to the United States District Court for the Southern District of New York on or before September 24, 1959 and is pending there.

*Action No. 3.* September 4, 1959. An action in the Supreme Court, New York County, against the Society for specific performance of an insurance policy of the Society issued to and held by the plaintiff. This claim is not included in Actions Nos. 1 or 2. It was removed to the United States District Court for the Southern District of New

York on or before September 24, 1959 and is pending there.

*Action No. 4.* September 4, 1959. An action against the Society in the Supreme Court, New York County, to recover $8,000 in membership dues. This action was removed to the Southern District of New York on or before September 24, 1959 and thereafter remanded because of the absence of the requisite jurisdictional amount to justify removal. 28 U.S.C. § 1332(a). This action is pending in the Supreme Court, New York County.

*Action No. 5.* September 4, 1959. An action against the Society in the Supreme Court, New York County, to recover $9,500 of alleged insurance commissions. This action was removed and thereafter remanded for lack of jurisdictional amount and is pending in the Supreme Court, New York County. Paragraph 38 of the complaint in Action No. 1 suggests that this claim, or aspects thereof, against the Society may be included within the claims in Action No. 1.

*Action No. 6.* September 4, 1959. An action against Emile A. Haar in the Supreme Court, Nassau County, to recover $4,000,000 for alleged libel and slander. This complaint suggests that this cause of action, in all or in part, comes within the fourth claim of the complaint in Action No. 1. This case is pending in the Supreme Court, Nassau County, New York.

*Action No. 7.* September 11, 1959. An action against the Society, eight of the individual defendants in Action No. 1 and one additional defendant, Stanley Andrews, a director of the Society, in the Circuit Court for the County of Wayne, Michigan, to restrain the Society and its officers and directors from holding a hearing or trial on company charges which led to Shelley's suspension as Chairman of the Board and a director of the Society.

The facts alleged in this complaint are similar in many respects to those alleged in Action No. 1. This case was removed to the United States District Court for the Eastern District of Michigan (S.D.) and thereafter remanded. All of the defendants have appeared and the action is pending in the state court in Michigan in the County where the Society has its principal place of business. On October 8, 1959 the Circuit Court for the County of Wayne granted a preliminary injunction and on October 14, 1960 granted a continuance to March 2, 1961 because of the substitution of attorneys for the defendants.

The Society instituted two actions against the plaintiff:

*Action No. 8.* September 21, 1959. An action in the United States District Court for the Eastern District of Michigan (S.D.) for a declaratory judgment as to the validity of the several contracts which the plaintiff claims exist between him and the Society. The attorney for the Society states that this action is being held in abeyance (by agreement between the attorneys for the respective parties) pending the disposition of Shelley's several suits. However, this is merely an agreement between counsel. A motion to dismiss or to stay this action was denied on or about December 2, 1959.

*Action No. 9.* June 14, 1960. An action in the Supreme Court, New York County, for a mandatory injunction to compel Shelley to turn over to the Society certain books and records. The court granted a preliminary mandatory injunction on July 5 and modified it on July 20, 1960. Shelley moved to dismiss this suit upon the ground that the issues were within Shelley's fifth claim in Action No. 1, added April 14, 1960 by way of an amendment to the complaint. The court denied Shelley's motion. This action is pending in

the Supreme Court, New York County.

Here we find nine suits which stem from the plaintiff's relationship with one corporation—five of them instituted in the Supreme Court, New York County, (two of which are pending in the Southern District of New York after removal); two instituted in the Supreme Court, Nassau County, (one of which is pending in this court after removal); one instituted and pending in the Circuit Court, Wayne County, Michigan, and one instituted and pending in the United States District Court for the Eastern District of Michigan (S.D.). But when Shelley made up his mind to bring suit he knew the facts that gave rise to the grievances he wished vindicated and he also knew against whom his grievances were directed. The objects of his grievances are the Society, all of its directors and officers, and one non-director who was nonetheless associated with the Society in a policy-making or an influencing position. Shelley knew, moreover, that the center of gravity of the Society was and continues to be Detroit, Michigan and that, of the nine officers and directors of the Society other than himself, four were citizens and residents of Michigan; that a fifth, Kester, is a citizen of Ohio residing in Toledo, forty miles from Detroit; that the remaining four officers or directors, though they are citizens and residents living in other states, were and are drawn to Detroit periodically to attend meetings as officers and directors of the Society; that the defendant Navarre was and continues to be a citizen and resident of Michigan. The moving affidavits of the defendants reveal that, since August 1958, the Society has been in the process of becoming a mutual insurance company; that, since that time, the details of this transformation have required the almost constant attendance of the officers and directors at the principal place of business of the Society, Detroit. Thus, as of September 1959, Shelley could have brought suit in a Michigan state court which could have acquired jurisdiction over every one of the defendants named in the action pending in this court. In fact, he did bring an action in such a court in 1959 naming as defendants every defendant named in Action No. 1 (except Navarre) naming in addition Stanley Andrews, another director of the Society. Thus, if Shelley seriously desired to assert his claims against the Society and any appreciable number of its officers, directors and advisors, the only appropriate forum was the Michigan State Court. The bona fides of Shelley may be questioned in view of Action No. 1 brought in the Supreme Court, Nassau County, New York, although he had a choice of forums. In the first place, he and his attorneys must be deemed to have known of the alarming calendar congestion and delay in that court. It is a matter of common knowledge that the interval of delay there from note of issue to date of trial is at least six years. See Johnson, Congestion in Metropolitan Suburbs, 27 Brooklyn L.Rev. 14, 18 (1960). Further, Shelley knew that the Supreme Court of Nassau County could not acquire jurisdiction of the person of any of the named defendants except the Society and Haar. The enumeration of the multifarious suits instituted by Shelley may very well suggest a design on his part to harass the defendants by splitting up his several claims in as many lawsuits as possible in as many and as varied courts as possible.

Such a splintering of actions serves to aggravate the nationwide congestion and delayed justice in our courts at both state and federal levels. It is a general rule in state and federal courts that a plaintiff must assert in one action all of his alleged claims arising from a single occurrence or transaction and that a defendant must assert in his answer all of his counterclaims arising therefrom. Here we find the plaintiff and the Society spreading all over the map their charges and counter-charges based upon a group of incidents with a common nexus. The Greeks had a word for it, coined in Aristophanes' "The Wasps."

Shelley v. Maccabees suggests a twentieth century plot for a modern version of the same theme. Our courts should be vitally concerned to see to it that disputes between parties be resolved in as few lawsuits as possible in as few courts as possible.

We are confronted at the outset with a question of jurisdiction of this court over Action No. 1. It was removed on the petition of the Society with no objection by the defendant Haar who, apparently, was a citizen of New York when the action was instituted. The Society construed the complaint as stating separate and independent claims against it for breach of contract and separate and independent claims against the individual defendants for wrongfully inducing those breaches. It claimed, therefore, that removal to this court was proper pursuant to 28 U.S.C. § 1441 (c) since there was diversity of citizenship between the plaintiff and the Society on the contract claim. On the motion of the plaintiff to remand, the plaintiff presented his construction of his own complaint: "The complaint does not seek damages against the corporate defendant The Maccabees for breach of contract * * * nor does it set forth any separate and independent claim or cause of action against said corporate defendant. * * * [P]laintiff claims damages solely for interference with contractual relations, inducement to breach contracts, interference with prospective advantage, and similar torts. Since the complaint fails to set forth any separate and independent claim or cause of action against the corporate defendant The Maccabees, and since Emile A. Haar, the other defendant upon whom service has been effected, is a citizen of New York, this case was removed improvidently and without jurisdiction." The plaintiff pointed out in support of the construction he advanced, that he had brought a separate action against The Maccabees for breach of contract which was pending in the United States District Court for the Southern District of New York. Chief Judge Bruchhausen denied the motion to remand in an opinion reported

in D.C.1959, 180 F.Supp. 517, finding that the plaintiff did allege a separate and independent claim against the Society for breach of contract. On a motion for leave to reargue, the plaintiff made the following argument: assuming that the complaint necessarily states a contract claim against the Society, that claim is not "separate and independent," within the meaning of 28 U.S.C. § 1441 (c), from the claim sounding in tort against the Society and the individuals for interference with the plaintiff's contractual relations. See generally Hart and Wechsler, The Federal Courts and The Federal System 1044–48 (1953). This motion was denied. There is much in the plaintiff's argument that commends itself to me and were the motion mine to decide I perhaps would have remanded the cause upon the ground that where federal jurisdiction on removal is doubtful or arguable it is better policy to remit the litigants to a forum whose jurisdiction is secure. See S. & E. Bldg. Materials Co. v. Joseph P. Day, Inc., D.C.E.D.N.Y.1960, 188 F.Supp. 742, 744–745. This eliminates the hazard (with its attendant unfairness) of re-trying the case in a state court should federal jurisdiction ultimately be found lacking.

Assuming that this court has jurisdiction, the motion to transfer the action to the United States District Court for the Eastern District of Michigan (S.D.) must be denied, even though I am satisfied that such a transfer should be made for the convenience of parties and witnesses and in the interest of justice. The transfer statute, 28 U.S.C. § 1404(a) allows transfer, in a proper case, to a district where the action "might have been brought." Under the recent decision of the Supreme Court in the case of Hoffman v. Blaski, 1960, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, the determination of where an action "might have been brought" is made as of the date of the commencement of the suit (not as of the date transfer is sought) and strictly on the basis of the appropriate venue statute (not on the basis of whether the defendant will

waive objection or make himself amenable to process.) The critical time, therefore, is September 1959. At that time, of the two defendants served, the Society was a resident of Michigan while Haar was a resident of New York State. Since jurisdiction is founded only on diversity of citizenship, the action could "be brought only in the judicial district where all plaintiffs or all defendants reside." 28 U.S.C. § 1391(a). Since all defendants (served or named) did not reside in a judicial district in Michigan, venue there was improper; the action could not have been brought there and consequently it may not be transferred there.

Of course, there is a more basic failing. Not only could this action not have been commenced in the United States District Court for the Eastern District of Michigan because of improper venue, it could not have been brought in *any* federal court because there is lacking the requisite diversity of citizenship between the parties: the plaintiff Shelley is a citizen of New York as is the defendant Haar. This action came into this court through the back door—the only entrance open to it and there is no forum to which it may be properly transferred because there is no federal forum where it might have been brought.

Whether a court that is without power to transfer an action pursuant to Section 1404(a) can, nevertheless, dismiss the action if the forum is inconvenient is a question that has received some theoretical attention. See, e. g., Hart and Wechsler, op. cit. supra, at 978. The argument that supports the finding of such a power is that the doctrine of forum non conveniens was applicable to federal courts before Section 1404 (a) was enacted and that the enactment of this provision did not deprive the district court of its old power but merely added another mode of relief. Such an argument might find some support in the cases which have construed Section 1404(a) as requiring a lesser showing

of inconvenience to support transfer than was needed to support a dismissal under the old doctrine of forum non conveniens. See, e. g., Foster v. United States Lines Co., D.C.S.D.N.Y.1960, 188 F.Supp. 389, 391. Of course, the contrary position has support also. See, for example, the passage in Hoffman v. Blaski, supra, which refers to "the superseded doctrine of forum non conveniens." 80 S.Ct. at page 1089. I have not conducted an exhaustive research on this point because, even assuming the court has the power to dismiss an action removed from a state court on the ground of forum non conveniens, I would not exercise my discretion and so dismiss only because to do so would nullify an order of Judge Rayfiel of this court who on December 16, 1960 granted the plaintiff's motion for a preference and set this case down for trial during the April 1961 term of this court. Had this motion been mine to decide I would have denied a preference in this court and have stayed the trial pending a trial in the state court of Michigan which has jurisdiction over the Society, Haar and all of the other defendants named (though not served) in the action pending here. For it is obvious that the plaintiff can obtain all of the varied reliefs he seeks (via a multiplicity of suits) by amending his complaint in the action now pending in the Michigan state court so as to allege all of the claims now asserted in the several complaints above referred to.

The disgraceful situation presented by these several suits could be rectified (to the extent that this court has the power to do so) by the granting of a motion to reargue the plaintiff's motion to remand followed by an order of remand or by the granting of a motion to reargue the plaintiff's motion for a preference followed by an order denying that motion and staying this action pending final determinations of Actions Nos. 7 and 8.

The motion to transfer is denied. Settle an order on or before ten days from the date hereof.