**Betty LEVIN, on behalf of herself and all other holders of the Class B Common Stock of Missouri Pacific Railroad Company, and on behalf of said Corporation, Plaintiff,**

**v.**

**MISSISSIPPI RIVER CORPORATION, Missouri Pacific Railroad Company, Robert H. Craft, T. C. Davis and Thomas F. Milbank, Defendants.**

**No. 67 Civ. 5095.**

United States District Court
S. D. New York.
July 30, 1968.

Orans, Elsen & Polstein, New York City, for plaintiff, Betty Levin, Sheldon H. Elsen, Lewis Shapiro, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for plaintiff-intervenor, Alleghany Corp., Granville Whittlesey, Jr., New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants, Mississippi River Corp. and Missouri P. R. R. Co., Edward W. Keane, Michael M. Maney, New York City, of counsel.

1. Apparently, Davis has not yet been served in this action.

OPINION

HERLANDS, District Judge:

Defendants Mississippi River Corporation and Missouri Pacific Railroad Company move, in the alternative, (1) to transfer this action, pursuant to 28 U.S.C. § 1404(a), from this Court to the United States District Court for the Eastern District of Missouri, Eastern Division (St. Louis); or (2) to dismiss this action (a) for failure to join indispensable parties, pursuant to Rules 12(b) (7) and 19(b), Fed.R.Civ.P., or (b) on the ground of *forum non conveniens;* or (3) to stay this action, pursuant to Rules 23 and 23.1, Fed.R.Civ.P., pending the outcome of a similar action, LeVasseur v. Bass, et al., Civil Action No. 68 C 27(3), currently in the Eastern District of Missouri, Eastern Division.

Plaintiff, a holder of Class B Common Stock of Missouri Pacific Railroad Company (hereinafter "Mopac"), brings this action on behalf of herself, representatively on behalf of all other Class B shareholders of Mopac, and derivatively on behalf of Mopac, against Mopac, Mississippi River Corporation (hereinafter "Mississippi")—holder of a majority of the Class A stock of Mopac—and three of the fifteen directors of Mopac. In addition to being directors of Mopac, the individual defendants hold other positions with Mopac and/or Mississippi: Robert H. Craft allegedly is a director and Financial Vice President of Mississippi, and chairman of the Finance Committee and a member of the Executive Committee of Mopac; defendant T. C. Davis [1] allegedly is a member of the Executive Committee and a former Chairman of the Board of Mopac; and defendant Thomas F. Milbank is allegedly a director and member of the Executive Committee of Mississippi.

The complaint alleges that there are 1,852,977 shares of Class A stock and 39,731 shares of Class B stock [para. 3 (a)][2] ; that about 59% of the Class A

2. The parenthetical references are to the complaint; e.g., para. ——.

stock is presently owned by Mississippi [para. 4(a)]; that Article VII D(4) of Mopac's "Articles of Association" ("Exhibit A" attached to complaint) provides that *each* share of Class A stock and *each* share of Class B stock "shall have the same voting power"—i. e., one vote per share [para. 3(g)]; and, therefore, Mississippi controls the election of each of the members of Mopac's Board of Directors [para. 4(h)], and, in addition, "Mississippi controls and dominates the affairs of Mopac, and has done so throughout the period when the matters complained of by plaintiff occurred" [para. 4(g)].

The complaint charges that "[i]n breach of its fiduciary obligations to MoPac and to MoPac's Class B stockholders, Mississippi, acting in concert with the individual defendants and the other directors of Mississippi and MoPac, has entered upon, and is in the process of carrying out, an unlawful scheme to enrich itself by depriving MoPac's Class B stockholders of their rightful share of Mopac's earnings, and by destroying the Class B stockholders' valuable residual equity in MoPac * * *" [para. 10]. As part of this "scheme", it is alleged, *inter alia,* that, in spite of Mopac's "sound" financial condition [para. 9(a)], "grossly inadequate" dividends have been paid on the Class B stock [para. 11(d)]; excessive surpluses have been accumulated by Mopac [para. 11(f)]; a "predatory" "Plan of Consolidation" was attempted [para. 13–14][3]; Mississippi and its directors have "publicly denigrated" the Mopac Class B stock [para. 16(a)]; and Mississippi has failed and refused to permit Mopac to take steps to reduce Mopac's increasing federal income tax burden [para. 18(d)].

The action seeks, *inter alia,* (1) an order directing Mopac's Board of Directors to declare, and Mopac to pay, judicially determined "just and reasonable" dividends on the Class B stock for the years 1955 to 1967; and (2) an injunction restraining Mississippi and Mopac's Board of Directors " * * * from the illegal, oppressive, and arbitrary use of their power to withhold dividends on the Mopac Class B stock * * * " and requiring "adequate dividends" to be declared and paid in the future. Plaintiff also requests the court to retain jurisdiction over the action to insure compliance with its judgment.

This action was commenced cn December 29, 1967. A short time thereafter, on January 19, 1968, a similar suit— LeVasseur v. Bass—was commenced in the United States District Court for the Eastern District of Missouri. The parties herein do not dispute that the *Le-Vasseur* action is substantially identical to the *Levin* action presently before this Court. In the *LeVasseur* action all fifteen Mopac directors are named as defendants. However, as of February 21, 1968, only three directors were served.[4]

*The Motion to Transfer*

This motion seeks to transfer the action to the United States District Court for the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. § 1404(a). That section provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action *to any other district or division where it might have been brought.*" (Emphasis added.)

Defendants Craft, Davis and Milbank are citizens of New York and are, therefore, not amenable to process in Missouri. It is clear, therefore, that this Court lacks the *power* to transfer the action because the Eastern District of Missouri is not a district "where it might have been brought" at the time suit was commenced. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); Johnson & Johnson v. Picard,

---

3. See Levin v. Mississippi River Fuel Corp., 386 U.S. 162, 87 S.Ct. 927, 17 L. Ed.2d 834 (1967).

4. Affidavit of William E. Haudek, attorney for plaintiff in LeVasseur v. Bass, sworn to February 21, 1968.

282 F.2d 386, 388 (6th Cir. 1960) (per curiam); Blackmar v. Guerre, 190 F.2d 427, 429 (5th Cir. 1951), affirmed, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Glicken v. Bradford, 204 F. Supp. 300, 302–303 (S.D.N.Y.1962); Ackert v. Ausman, 198 F.Supp. 538 (S.D. N.Y.1961), petition for writ of mandamus denied sub nom. Ackert v. Bryan, 299 F.2d 65 (2nd Cir. 1962); Shelley v. The Maccabees, 191 F.Supp. 742 (E.D. N.Y.1961).

■ The affidavits submitted by defendants Craft and Milbank consenting to the jurisdiction and venue of the Missouri court [5] cannot alter this conclusion. The relevant inquiry under 28 U.S.C. § 1404(a) is whether the suit "might have been brought" in the transferee court " * * * independently of the wishes of defendant[s] * * *." Hoffman v. Blaski, 363 U.S. at 344, 80 S.Ct. at 1090; Johnson & Johnson v. Picard, supra; Glicken v. Bradford, supra.

Defendants argue, however, that the Court can circumvent the problem of its *power* to transfer this action by either (1) dismissing the claims against defendants Craft and Milbank, pursuant to Rule 21, Fed.R.Civ.P.; or (2) severing the claims against defendants Craft and Milbank, also pursuant to Rule 21, and staying further proceedings in this district.[6]

The power to sever claims in a shareholder suit " * * * solely for the purpose of facilitating transfer" has recently been upheld by the Court of Appeals for this Circuit in Wyndham Associates v. Bintliff, 398 F.2d 614, 618, (2nd Cir. June 26, 1968).[7] The Court upheld this power " * * * at least in cases where * * * the defendants as to whom venue would not be proper in the transferee district are alleged to be *only indirectly connected* to the manipulations which form the main subject matter of the action"; or, in other words, are " * * * in some manner *peripherally involved* in the alleged wrongdoing" (398 F.2d at 619) (Emphasis added.).

It is obvious that such a severance presupposes a finding that the balance of convenience and justice favors transfer, or that, as the Court of Appeals put it, " * * * the administration of justice would be materially advanced by severance and transfer * * *" (398 F.2d at 618). This Court, in the exercise of its discretion, does not deem such a finding meritorious in the slightest.

The parties have submitted numerous affidavits and memoranda of law detailing the considerations which they honestly believe weigh heavily either in favor of a transfer or in favor of retaining the action in this district. In addition, extensive argument of the motions presently before the Court was heard on March 15, 1968. The reported minutes of that argument[8] also contain much that is relevant to the discretionary aspects of a Section 1404(a) motion.

Defendants argue that in a suit such as this—to compel the declaration of dividends—the "fundamental issue" will be

---

5. The affidavit of Robert H. Craft, sworn to March 7, 1968, states that "[i]f the motion to transfer, dismiss or stay this action is granted, I hereby agree not to assert any defense of improper venue or lack of personal jurisdiction which I may have in this action, if transferred, or in any new action commenced by the plaintiff in St. Louis based upon the allegations of the present complaint."
  The affidavit of Thomas F. Milbank, sworn to March 8, 1968, contains a substantially similar statement.
  Both Craft and Milbank join in the corporate defendants' motions.

6. Although neither of these requests for relief, pursuant to Rule 21, Fed.R.Civ.P., are the subject of a formal motion, the Court will reach the issues so presented to avoid piece-meal adjudication of the transfer question.

7. The *Wyndham Associates* case had not yet been decided when the parties herein submitted their final papers on these motions. Defendants relied instead on Leesona Corp. v. Cotwool Mfg. Corp., 308 F.2d 895 (4th Cir. 1962), in support of their Rule 21 arguments.

8. References to the minutes of the argument of March 15, 1968 are made, from time to time, in this opinion; SMP ——.

one of business judgment: whether "[i]n the light of such factors as Mopac's earnings, its obligations, its need for cash, its need to maintain and modernize its physical facilities, and its opportunities for profitable mergers and acquisitions, * * * [Mopac's] Board of Directors act[ed] in good faith and with reasonable business judgment in determining dividend policy during the period 1955–66" [Affidavit of Edward W. Keane, sworn to April 8, 1968, pp. 4–5].

With this issue in mind, defendants assert that they will be obliged to reconstruct Mopac's financial and operating data for the years in issue [SMP 13–14, 37; Affidavit of L. A. Bruns, treasurer of Mopac, sworn to March 6, 1968; Affidavit of Edward W. Keane, sworn to April 8, 1968, pp. 5–8]; that "inside" expert witnesses—i. e., Mopac officers and employees—will be required to testify concerning the operational and financial decisions which were made and that the *entire* Board of Directors of Mopac will testify in detail to prove the good faith of Mopac's dividend policy [Keane affidavit, pp. 8–10]; that "outside" expert witnesses "may" be required, but that their testimony would be "supplementary in nature" and of little importance because they generally lack first-hand knowledge of the Mopac system, the operations of western railroads, and the economy of the region [Keane affidavit, pp. 10–12]; and that the voluminous documentary records of Mopac are in St. Louis where witnesses for both sides will have to examine them if the witnesses are to give more than "armchair assessment[s]".

Among the additional considerations to which defendants point in support of transfer are that all the books and records of Mopac, the records of the Mopac reorganization proceedings,[9] and the working files and auditors of Mopac's accountants, Price Waterhouse & Co., are located in St. Louis; that the "focal point" of Mopac's executive, financial and administrative functions are in St. Louis;

that six members of the Board of Directors reside in Missouri and an additional six members reside in states closer to Missouri than to New York (three in Texas and one each in Louisiana, Oklahoma and Arkansas); that the substantive law of Missouri would govern in this action; that the calendar in the Eastern District of Missouri is current while the calendar in this district is congested; that the LeVasseur v. Bass action, asserting virtually identical claims as this suit, is presently pending in the Eastern District of Missouri, and, therefore, discovery proceedings would necessarily be duplicated unless this action is transferred and then consolidated with *LeVasseur;* that, in the event plaintiff is successful, the interests of justice would be better served if a Missouri court were required to retain jurisdiction to insure compliance with the judgment; and that transfer would not burden plaintiff personally because she is suing derivatively, is not a citizen of New York but of Massachusetts, and has no particular knowledge of the facts in this case.

Plaintiff's theory of the case and the proofs required differs to a material extent from defendant's conception. Plaintiff contends that this is not the usual suit to compel declaration of dividends where "a close question of judgment" is involved and it is necessary to reconstruct Mopac's operating figures [SMP 33]. Instead, plaintiff argues, this is a case of "predatory" finance in which Class A is attempting to squeeze Class B out through a variety of means which are set forth in the complaint. Furthermore, plaintiff states that she will accept defendant's operating figures or the figures on file with the Interstate Commerce Commission [SMP 33]. The plaintiff's case will be one of public records and other documents—such as accounting records and reports, minutes of shareholder and directors' meetings, and I.C.C. reports—and expert witnesses who are in New York [SMP 33, 35, 46–47].

9. See Missouri Pacific R. Co. Reorganization, 290 ICC 477 (1954).

Plaintiff states that its "principal witness" will be an expert "in the railroad field" [SMP 45–46].

Whichever theory of the case is correct, it is obvious that the disruption of defendants' business can be minimized by practical accommodations and reasonable procedures. Thus, substantial interruption of defendants' business files can be significantly obviated "via the modern miracle of photographic reproduction." Herbst v. Able, 278 F.Supp. 664, 667 (S.D.N.Y.1967). In addition, plaintiff's attorneys agreed, on oral argument, that instead of issuing "omnibus dragnet subpoenas" they would travel to Missouri and make a "discriminating selection" of defendant's books and records [SMP 41]. And, as plaintiff has suggested, "[a]ny possible disruption of Mopac's business through the attendance of its executives at the New York trial can be minimized by practical accommodations of the sort envisioned in Ford Motor Co. v. Ryan," 182 F.2d 329, 330–331 (2nd Cir.), cert. denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). See Ruskay v. Reed, 225 F. Supp. 581, 583 (S.D.N.Y.1963).

The possibility of burdensome duplication of discovery proceedings and other alleged harassment caused by the existence of two suits in different parts of the country against Mopac and Mississippi involving almost identical claims has been largely obviated by the offer of the attorneys for plaintiff in LeVasseur v. Bass to stipulate for a stay in that action pending "final determination" of this action. LeVasseur's offer to stay his suit is made upon condition that:

"(a) the parties in the Levin action agree not to oppose a motion by LeVasseur to intervene in the Levin action if LeVasseur should make such a motion; and (b) LeVasseur shall be entitled to move to vacate the stay of his action if it should be judicially determined that the Levin action is not maintainable as a class suit." [Affi-

davit of William E. Haudek, sworn to February 21, 1968.]

Plaintiff herein has already agreed to consent to LeVasseur's intervention in this action. [Affidavit of Sheldon H. Elsen, sworn to February 23, 1968, p. 4.]

In addition to the foregoing, plaintiff points to the following desiderata in favor of retaining this suit in this district: that "by far the largest part" of the Class B stockholders are in New York, including the majority Class B stockholder, Alleghany Corporation,[10] which has been, and will be, of major assistance to plaintiff in developing this lawsuit [Elsen affidavit, p. 8; Affidavit of Granville Whittlesey, Jr., sworn to April 15, 1968, p. 6; SMP 34, 35]; that Mopac's Board of Directors are authorized by its by-laws to meet in New York [Elsen affidavit, p. 8]; that Mopac and Mississippi have offices and other facilities in New York; that defendants' "underwriters and outside financial advisers" as well as the three individual defendants are in New York; and that defendant Craft, allegedly Mopac's "principal financial officer"— a characterization which defendants deny [Affidavit of Robert H. Craft, sworn to March 7, 1968, pp. 1–2; SMP 10]—resides in and has his office in New York, where many of Mopac's financial decisions are made [Elsen affidavit, p. 6; post-argument affidavit of Sheldon H. Elsen, sworn to April 15, 1968, p. 2; SMP 34].

It is obvious that in this type of case there will be inconvenience to one side or the other no matter where the trial takes place. The Court's decision on this motion to transfer requires a "particularized judgment" in light of all of the circumstances. Securities and Exchange Commission v. Golconda Mining Co., 246 F.Supp. 54, 57 (S.D.N.Y.1965), petition for writ of mandamus denied sub nom. Golconda Mining Corp. v. Herlands, 365 F.2d 856 (2nd Cir. 1966).

In order to justify the granting of a motion to transfer, the movant

---

10. Alleghany Corporation's motion for leave to intervene as plaintiff in tihs case was granted on May 2, 1968.

must make "a clear-cut showing" that the balance of convenience and the interests of justice favor trial in the proposed transferee forum rather than the present forum. It is not enough to merely show that one is inconvenienced in the present forum. See Toti v. Plymouth Bus Company, 281 F.Supp. 897, 898 (S.D.N.Y. 1968); Ruskay v. Reed, 225 F.Supp. 581, 582 (S.D.N.Y.1963); Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y.1958). Thus, the burden is clearly on the movant. See Ford Motor Co. v. Ryan, 182 F.2d at 330 (movant must make out "a strong case" for transfer); Herbst v. Able, 278 F.Supp. at 666.

■ In addition, plaintiff's choice of forum is " * * * entitled to considerable respect * * *," Saperstone v. Kapelow, 279 F.Supp. 781, 782 (S.D.N.Y. 1968); Securities & Exchange Commission v. Golconda Mining Co., 246 F.Supp. at 56. Thus, "where a transfer would merely shift the inconvenience from one party to the other * * * or where after balancing all the factors, the equities lean but slightly in favor of the movant, * * * the plaintiff's choice of forum should not be disturbed." De-Luxe Game Corp. v. Wonder Products Co., 166 F.Supp. 56, 61 (S.D.N.Y.1958).

■■ In light of the countervailing considerations and the oft-repeated relevant criteria on a transfer motion, see Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Oil & Gas Ventures-First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 754 (S.D.N.Y.1966); United States v. General Motors Corporation, 183 F.Supp. 858, 860 (S.D.N.Y.1960), the Court, in the exercise of its discretion, would not, and does not, deem the balance of convenience and justice to favor transfer.[11]

■ It must be added, however, that, even assuming the balance of convenience and justice to be otherwise, the Court does not feel that the power to sever claims merely to facilitate transfer would be correctly exercised in this case. Defendants Craft and Milbank are not alleged to be, in the Court's view, so "indirectly connected" to, or "peripherally involved" in, the main subject matter of this action that a severance would be proper. See Wyndham Associates v. Bintliff, 398 F.2d at 619.

The Court, therefore, rejects movants' suggestion that it dismiss or sever the claims against defendants Craft and Milbank, pursuant to Rule 21, Fed.R.Civ.P.

Accordingly, the motion to transfer this action, pursuant to 28 U.S.C. § 1404 (a), is hereby denied in all respects.

### The Motion to Dismiss for Failure to Join Indispensable Parties

Defendants seek to dismiss this action, pursuant to Rules 12(b) (7) and 19(b), Fed.R.Civ.P., for failure to join a quorum —a majority—of Mopac's board of directors as parties defendant. The motion is hereby denied.

The basis for this motion is that the complaint alleges wrongdoing by the entire Mopac board of directors and seeks an order directing that board to declare, and Mopac to pay, additional dividends; but that only three of the 15 members of Mopac's board are joined herein as parties defendant. Defendants argue that "[t]he general rule is that, 'in a suit by stockholders to compel the declaration and payment of dividends, a majority [i. e. quorum] of the directors of the corporation are indispensable parties'." [Defendant's Memorandum of Law, p. 21.]

This may very well be the "general rule" in a case in which a majority of a

---

11. The fact that Missouri law is the applicable substantive law in this suit is not entitled to great weight. See Ciprari v. Servicos Aereos Cruzeiro do Sul, S.A., 232 F.Supp. 433, 443 (S.D. N.Y.1964) (Brazilian law). A suit to declare dividends on an Illinois railroad was tried in this Circuit without any apparent difficulty. See Guttman v. Illinois Central R. Co., 91 F.Supp. 285 (E. D.N.Y.1950), affirmed, 189 F.2d 927 (2nd Cir.), cert. denied 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652 (1951).

board of directors is amenable to suit in a single forum. However, in this case, there is no state in which more than six of the 15 members of Mopac's board can be sued. Defendants argue, nevertheless, that should the Court dismiss this suit, plaintiffs could thereupon sue Mopac, Mississippi and six of the directors in Missouri state or federal courts.

As the Supreme Court recently stated in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 746, 19 L.Ed.2d 936 (January 29, 1968),

> " * * * in a diversity case the question of joinder is one of federal law. [Citations omitted.] To be sure, state-law questions may arise in determining what interests the outsider actually has, * * * but the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter."

The question whether, in the circumstances of this case, a majority of Mopac's directors are "indispensable" parties must be determined by reference to Rule 19(b), Fed.R.Civ.P.[12] That rule sets forth an "equity and good conscience" test as to whether the action should proceed without the "outsider". The most relevant "factors" proposed by Rule 19(b) are " * * * whether a judgment rendered in the person's absence will be adequate * * * " and " * * * whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." [13]

Will a judgment ordering the declaration and payment of dividends by Mopac be "adequate" if less than a majority of Mopac's board of directors are parties defendant? A growing and persuasive body of authority, which this Court adopts, dispenses with the need to join as defendants directors who are not amenable to service in the plaintiff's chosen forum. See Doherty v. Mutual Warehouse Company, 245 F.2d 609, 612 (5th Cir. 1957); Kroese v. General Steel Castings Corporation, 179 F.2d 760, 761–764, 15 A.L.R.2d 1117 (3rd Cir.), cert. denied 339 U.S. 983, 70 S.Ct. 1026, 94 L.Ed. 1386 (1950); Altman v. Central of Georgia Railway Company, 254 F.Supp. 167, 169–170 (D.D.C.1965), reversed on other grounds, 124 U.S.App.D.C. 155, 363 F.2d 284 (D.C.Cir.), cert. denied 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966); Whittemore v. Continental Mills, 98 F. Supp. 387, 390–394 (D.Me.1951); Gordon v. Elliman, 306 N.Y. 456, 463–465,

---

12. Rule 19(b), Fed.R.Civ.P. provides:
    "(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a) (1)– (2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."

13. Other factors set forth in Rule 19(b) are, of course, relevant but are deemed worthy of less weight on this motion. Thus, in view of the fact that plaintiff demands judgment that she be awarded " * * * the costs, expenses, and reasonable counsel fees of this action, and [that] defendant Mopac be reimbursed by Mississippi and the individual defendants for all such amounts paid by Mopac * * * " [Complaint, p. 19], a judgment against the parties defendant as presently constituted might be prejudicial to the three director-defendants.

    On the other hand, any prejudice to the absent directors of Mopac may be averted by their voluntary intervention in this action. See Doherty v. Mutual Warehouse Company, 245 F.2d 609, 612 (5th Cir. 1957) ("Through service upon the corporation, the directors have notice and an opportunity to appear or intervene if they so desire."); Advisory Committee Notes to amended Rule 19, Fed. R.Civ.P., 39 F.R.D. 89, 92.

119 N.E.2d 331 (1954); Swinton v. W. J. Bush & Co., 199 Misc. 321, 102 N.Y.S.2d 994, 997–998 (Sup.Ct.N.Y.), affirmed, 278 App.Div. 754, 103 N.Y.S.2d 1019 (1st Dept. 1951).

The rationale for this approach is that a court ordering payment of dividends is simply " * * * declaring rights protected by a rule of law, not calling upon the directors to exercise judgment." Kroese v. General Steel Castings Corporation, 179 F.2d at 763–764; 1 Hornstein, Corporation Law and Practice § 478, at 609 (1959). Any action required of the corporation after judgment is " * * but a ministerial act." Kroese v. General Steel Castings Corporation, 179 F.2d at 764. See also 2 Barron & Holtzoff, Federal Practice and Procedure § 513.7, at 126 (Wright ed. 1961).

The contrary and less persuasive view —that a majority of the board of directors are indispensable parties in a suit to compel declaration and payment of dividends—finds support in Schuckman v. Rubenstein, 164 F.2d 952, 957 (6th Cir. 1947), cert. denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948). See Tower Hill Connellsville Coke Co. v. Piedmont Coal Co., 33 F.2d 703, 706 (4th Cir.), cert. denied 280 U.S. 607, 50 S.Ct. 157, 74 L.Ed. 650 (1929). The logical underpinning of this position is that a court cannot declare a dividend; it can only order the directors *in personam* to do so. Thus, the court's decree will not be "effective" unless a quorum of the board of directors are parties defendant. Schuckman v. Rubenstein, 164 F.2d at 957.

█ Finally, the Court having already rejected defendants' assertion that the balance of convenience and justice favors trial in a Missouri forum, it is arguable whether plaintiff would have as "adequate" a remedy if this suit were dismissed. This Court, therefore, holds that a majority of Mopac's board of directors are not indispensable parties to this suit.

### Motion to Dismiss on the ground of Forum Non Conveniens

█ The factors previously presented by defendants in support of their motion to transfer, pursuant to 28 U.S.C. § 1404(a), are reasserted as the basis for this motion to dismiss on the ground of *forum non conveniens*. What defendants overlook is that the enactment of 28 U.S.C. § 1404(a) makes it improper to dismiss an action because of *forum non conveniens* where the allegedly more convenient forum is another United States District Court. Hoffman v. Blaski, 363 U.S. at 342, 80 S.Ct. 1084 (*forum non conveniens* doctrine "superseded"); Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (the "harshest result" of the doctrine—dismissal—was "eliminated"); Fitzgerald v. Westland Marine Corporation, 369 F.2d 499, 501 n. 3 (2nd Cir. 1966) (28 U.S.C. § 1404(a) "codified and replaced the doctrine"); Collins v. American Automobile Insurance Company, 230 F.2d 416, 418 (2nd Cir.) ("the field of" the doctrine "is entirely occupied by 28 U.S.C. § 1404(a)"), certiorari dismissed 352 U.S. 802, 77 S.Ct. 20, 1 L.Ed.2d 37 (1956); Headrick v. Atchison, T. & S. F. Ry. Co., 182 F.2d 305, 308 (10th Cir. 1950). See, Wright, Federal Courts § 44, at 141 (1963).

█ Today, the inherent power of a federal court to dismiss on the ground of *forum non conveniens* is restricted to cases where the alternative forum is in a foreign country, see Fitzgerald v. Westland Marine Corporation, supra; Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 645 (2nd Cir.), cert. denied 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); Menendez Rodriguez v. Pan American Life Insurance Co., 311 F.2d 429, 432 (5th Cir. 1962); Prack v. Weissinger, 276 F.2d 446, 448 (4th Cir. 1960), or in a state court, see Nee v. Dillon, 99 U.S.App.D.C. 332, 239 F.2d 953, 955 (1956); Gross v. Owen, 95 U.S.App.D.C. 222, 221 F.2d 94 (D.C.Cir.1955); Altman v. Central of Georgia Railway Company, 254 F.Supp.

at 176, reversed, 363 F.2d 284 (D.C.Cir.), cert. denied 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966).

But even if, as defendants urge, the doctrine of *forum non conveniens* retains vitality in cases such as this—where the prerequisites for transfer, pursuant to 28 U.S.C. § 1404(a), cannot be met—the Court, in the exercise of its discretion and for the reasons previously stated in denying the motion to transfer, will not dismiss this action.

Accordingly, the motion to dismiss on the ground of *forum non conveniens* is hereby denied.

### The Motion to Stay this Action

Defendants move to stay this action, pursuant to Rules 23 and 23.1, Fed.R. Civ.P., and the inherent equity power of this Court. The basis for this motion is the vexation inherent in the concurrent existence of this action and the LeVasseur v. Bass action in the United States District Court for the Eastern District of Missouri.

While there can be no doubt that this Court has the *power* to issue a stay of proceedings before it, Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936) (inherent power in every court "to control the disposition of the causes on its docket"), the issue here is one of the *propriety* of using that power. As Justice Cardozo stated in *Landis*, there must be a "pressing need" or a "clear case of hardship or inequity" before a court should stay proceedings before it so that litigants elsewhere may proceed to judgment (299 U.S. at 255, 57 S.Ct. at 166). Because this Court does not deem such a "need" present in this case, the motion is hereby denied.

Although litigation of the same issues should " * * * be centered in a single forum" wherever possible, Rosenfeld v. Schwitzer Corporation, 251 F. Supp. 758, 763 (S.D.N.Y.1966), the possibility of hardship to the defendants herein by virtue of the existence of two nearly identical actions in different parts of the country is obviated by the offer of the plaintiff in LeVasseur v. Bass to stay his suit pending the outcome of this suit.[14] See Montro Corp. v. Prindle, 105 F.Supp. 460, 465 (S.D.N.Y.1952); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 96 F.Supp. 774 (S.D.N.Y.1951).

Even the "unique problems presented by stockholder litigation" would not justify a stay herein. Ferguson v. Tabah, 288 F.2d 665, 672 (2nd Cir. 1961) (denial of stay upheld where only one other shareholder suit pending). Compare Schiff v. Metzner, 331 F.2d 963 (2nd Cir.), cert. denied 379 U.S. 881, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964).

Finally, although there is no inflexible, mechanical rule that where there are two cases pending between the same parties involving the same issues the first action commenced should proceed, defendants have not demonstrated sufficient reason why that general proposition should not be followed herein. See Ferguson v. Tabah, supra; Speed Products Co. v. Tinnerman Products, 83 U.S.App.D.C. 243, 171 F.2d 727, 729–730 (D.C.Cir. 1948); Cresta Blanca Wine Co. v. Eastern Wine Corporation, 143 F.2d 1012, 1014 (2nd Cir. 1944); Etablissements Henry-Le-Paute, S.A. v. American Greiner Electronics Inc., 172 F.Supp. 228, 229 (D. Conn.1959).

Defendants' motions are hereby denied in all respects. So ordered.

14. Affidavit of William E. Haudek, sworn to February 21, 1968.